**STONE MOUNTAIN GAME
RANCH, INC., Plaintiff,**

v.

**George M.D. (John) HUNT, III, and
George J. Willis, and Stone Mountain
Memorial Association, d/b/a Stone
Mountain Park, Defendants.**

Civ. A. No. C82–2745A.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 1, 1983.

Archer D. Smith, III, Harmon, Smith & Bridges, Atlanta, Ga., for plaintiff.

Royce F. Morris, Asst. Atty. Gen., State Law Dept., Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is brought under the Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13, 42 U.S.C. § 1983 (1976), for the deprivation of rights guaranteed the plaintiff under the fourteenth amendment of the United States Constitution and Article 1, section 1 of the Georgia Constitution. Generally speaking, plaintiff alleges that defendants, under color of state law, have damaged and converted the property rights of plaintiff in its business operation known as "The Stone Mountain Game Ranch," located in Stone Mountain Park, DeKalb County, by tortious acts and fraudulent misrepresentations and

interfered with its freedom of association. *See* Complaint ¶ 1 (filed December 3, 1982). Jurisdiction is predicated on 28 U.S.C. § 1343(3). Before the court are plaintiff's motion for leave to amend the complaint and defendants' motion to dismiss.

### I.

█ Before specifically outlining the facts pertinent to decide defendants' motion to dismiss, this court must initially determine exactly what facts are to be considered, and, therefore, plaintiff's motion for leave to amend requires initial consideration. Rule 15(a) of the Federal Rules of Civil Procedure states in pertinent part that "a party may amend his pleading ... by leave of court ... and leave shall be freely given when justice so requires." Fed.R. Civ.P. 15(a). The aim of this Rule is to reinforce one of the basic policies of the Federal Rules that pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1487, at 376 (1971) [hereinafter cited as "Federal Practice and Procedure"]. Here, plaintiff's actions exhibit neither undue delay, bad faith, nor a dilatory motive. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Furthermore, defendants do not adequately present a showing of undue prejudice, such that they would be put to added expense and be subject to the burden of a more complicated or lengthy trial. Indeed, the proposed amendment apparently seeks to clarify and is not remote from the issues of the case. *See* 6 Federal Practice and Procedure, *supra,* § 1487.

█ Despite defendants' argument to the contrary, a proper evaluation of the motion to dismiss requires that plaintiff's motion to amend be considered prior to a ruling on defendants' motion to dismiss. First, typically, a plaintiff will not be precluded from amending a defective complaint in order to state a claim upon which relief can be granted. 6 Federal Practice and Procedure, *supra,* § 1487, at 431.

Second, the question presented in a Rule 12(b) motion is whether the allegations constitute a claim under Rule 8(a). 5 Federal Practice and Procedure, *supra,* § 1357, at 594.

Accordingly, plaintiff's motion for leave to amend the complaint is granted. Specifically, the following is ALLOWED: (1) by amending ¶ 8 of the original complaint by adding new subparagraphs (I) and (J), (2) by amending ¶ 16 by addition, (3) by amending ¶ 25 by addition, (4) by amending ¶ 46 by striking it in its entirety and substitution, and (5) by amending ¶ 73 by striking it in its entirety and substitution.

█ With the amended complaint now before it, the court shall now consider defendants' motion to dismiss. As such, this court is mindful of the well accepted rule that in appraising the sufficiency of this complaint, the standard is to determine whether it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

The factual allegations are as follows. Plaintiff, a Georgia corporation, maintained and operated the Stone Mountain Game Ranch at the Stone Mountain Park, Atlanta, Georgia. It was a tenant of defendant Stone Mountain Memorial Association ("Association"). Complaint ¶ 2. Defendant Association is a non-profit, public corporation, and is an instrumentality of the State of Georgia. *Id.* ¶ 5. Plaintiff has leased this business location from defendant Association under a lease agreement dated December 19, 1961, and which expired under its terms on December 31, 1982. *Id.* ¶ 2. Pursuant to this lease agreement, plaintiff was authorized to develop and operate its business of operating an animal game ranch. *Id.* ¶ 10. Around October of 1981, plaintiff approached defendants for the purpose of negotiating a renewal of the lease agreement. *Id.* ¶ 13. From November, 1981, through June 24, 1982, plaintiff received representations that its lease would be renewed. *Id.* ¶ 8. Evidently, these representations were expressed by or through de-

fendant George M.D. (John) Hunt, III ("Hunt"), Chairman of the Board of defendant Association, *id.* ¶ 3, and defendant George J. Willis ("Willis"), defendant Association's appointed negotiator. On June 24, 1982, defendant Association informed plaintiff of its intent to purchase plaintiff's business operation and not to lease to plaintiff. This action was by and through formal resolution. *Id.* ¶¶ 8E, 22. At this time, defendants represented that plaintiff would receive a fair market value for its business. *Id.* ¶ 8G. On December 1, 1982, defendant Willis offered to purchase plaintiff's business for $78,000.00. On December 2, 1982, this offer was increased to $100,000.00 "for not only the tangible assets, but also the good will and other intangible assets of the Game Ranch." *Id.* ¶ 25.

Plaintiff contends that the representations of the defendants were false and were made knowingly by the defendants. Furthermore, plaintiff argues that defendants Hunt and Willis, through "their control of" defendant Association, entered a tortious conspiracy to unlawfully deprive plaintiff of its property, while acting under color of state law. *Id.* ¶ 8. Plaintiff represents that it reasonably relied upon the representations made by defendants that they would negotiate a renewal of the lease and that following defendant Association's disclosure of an intent to purchase, that they would negotiate and make an offer to purchase plaintiff's business operation for a fair market value. *Id.* ¶ 31. Finally, plaintiff alleges that as a result of the intentional misrepresentations, plaintiff has been compelled to remove its business operation, trade fixtures, animals, and inventory "in an unreasonably short period of time," thereby resulting in plaintiff's sustaining damages "solely as a result of the misconduct, bad faith, fraud and deceit of Defendants." *Id.* ¶ 37. *See also id.* ¶¶ 16, 8F, 8G.

In addition, plaintiff alleges that defendants Hunt and Willis conspired to interfere with its contract rights. Specifically, plaintiff argues that these two defendants attempted to "cover up" state law violations by interfering with plaintiff's contract negotiations with the Association for the purchase of plaintiff's business by the Association. *Id.* ¶ 49. It appears that the acts which were sought to be "covered up" are enumerated in paragraphs 49A through 49L of the complaint, which include a public official's selling of a tractor to the Association with the consent and authority of defendants and the purchase of an automobile by the direction of the defendants, without bid, from defendant Hunt's father-in-law.

Finally, plaintiff alleges that defendants Hunt and Willis' acts were motivated by their desire to intimidate or harass the plaintiff for his association with Eugene I. Peterson ("Peterson"), Senior Assistant General Manager and Treasurer of the Association, *id.* ¶ 52, in violation of plaintiff's first amendment rights of association and free speech. *Id.* ¶ 51.[1]

As a result of these alleged violations, plaintiff asserts that it has been damaged in the amount of $800,000.00. Moreover, as to each count—(I) fraud and deceit and (II) conspiracy to interfere with plaintiff's contract rights—plaintiff prays for attorneys fees and exemplary damages.

## II.

■ This court's initial task is to determine whether this case falls within the subject matter jurisdiction of this court. Procedurally speaking, a functional analysis between Fed.R.Civ.P. 12(b)(1) and Fed.R. Civ.P. 12(b)(6) is necessitated, as *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) displays. *Suthoff v. Yazoo County Industrial Development Corp.,* 637 F.2d 337 (5th Cir.), *reh'g denied,* 642 F.2d 822

1. The relationship between defendants Willis and Hunt and Mr. Peterson is exhibited in paragraphs 53–55 of the complaint. Basically, it is alleged that Mr. Peterson was forced to resign by his objections to the cancelling of Traveler's Insurance Company coverage with the Association and to the arranging for Georgia International Insurance Company to issue health insurance coverage policy to the employees of the Association. Plaintiff alleges that this change was arranged in violation of fiduciary and ethical duties as public officials and public employees under the state laws of Georgia.

(5th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 316 (1982). In *Bell*, a suit was brought in federal district court alleging that agents of the Federal Bureau of Investigation who imprisoned individuals violated these individuals' constitutional right to be free from deprivation of their liberty without due process of law and subjected their premises to be searched and their possessions to be seized in violation of their constitutional right to be free from unreasonable searches and seizures, thereby causing damages in excess of $3,000.00. The complaint alleged that jurisdiction was founded upon federal questions arising under the Fourth and Fifth amendments. The federal district court, on its motion, dismissed the suit for want of jurisdiction. The court of appeals affirmed. The Supreme Court reversed. The Court, in noting that "[b]efore deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States," 327 U.S. at 681, 66 S.Ct. at 775, stated: "[W]here the complaint ... is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions ... [(1) where the alleged claim under the Constitution or federal statutes clearly appears too immaterial and made solely for the purpose of obtaining jurisdiction or (2) where such a claim is wholly insubstantial and frivolous], must entertain the suit. *Id.* at 681–82, 66 S.Ct. at 775–76. In clearly distinguishing between lack of jurisdiction and failure to state a claim upon which relief can be granted, or in procedural terms between Rules 12(b)(1) and 12(b)(6), the Court provided the following:

> Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Id.* at 682, 66 S.Ct. at 776 (citation omitted).

The impact of the *Bell* case in a section 1983 context is shown in *Suthoff v. Yazoo County Industrial Development Corp.*, *supra*. In that case, land owners brought an action against various public agencies and individuals alleging that they entered into a conspiracy to misuse the municipality's expropriation powers by institution of proceedings not intended to condemn in order to coerce land owners to sell their property at a price far below its value to entities not authorized by law to expropriate property. The federal district court dismissed the complaint as failing to state a claim over which it had subject matter jurisdiction pursuant to Rule 12(b)(1). In reversing, the Fifth Circuit stated the issue as follows: "Was the federal court without jurisdiction conferred by Congress to decide the case, on the face of the complaint, under the stringent test enunciated by *Bell v. Hood,...*," 637 F.2d at 339, found that the claim was not frivolous, and read *Bell* as follows:

> Clearly, the allegations of the complaint are drawn so as to seek recovery under both the federal constitution and a federal statute and thus support federal subject matter jurisdiction absent a finding that the claims are immaterial or frivolous. With respect to the contention of federal immateriality because the allegations also support the state remedy for fraud and deceit, *Bell v. Hood* teaches us that we must sustain federal jurisdiction, if construed in the light of the pleader's purposes, the claim is based upon the federal constitution or statutes, whether or not as drafted it also alleges a state

cause of action. 327 U.S. at 681, 66 S.Ct. at 775.

*Id.* at 339. Yet, *Suthoff* cannot be read for the broad proposition that section 1983 encompasses any tort committed by a governmental personality. This narrower reading of *Suthoff* is buttressed by Justice Rehnquist's dissent in the Supreme Court's denial of certiorari:

> [T]he decision of the Court of Appeals in this case reveals enough differences of approach among the Federal Courts of Appeals in deciding the federal question alleged in the complaint is "wholly insubstantial and frivolous" within the meaning of *Bell,* to suggest a need for clarification of *Bell* itself. The Court of Appeals quite accurately recognized that *Bell* created, in cases seeking recovery directly under the Constitution or laws of the United States, three tiers of review. The first tier was where the complaint stated a claim found to be wholly insubstantial and frivolous, in which case it could be dismissed for *want of jurisdiction.* The second tier was where the complaint stated the claim *not* wholly insubstantial and frivolous, in which case the federal court could not dismiss the complaint for lack of jurisdiction, but could dismiss it for failure to state a claim upon which relief may be granted. In other words, at the second-tier level, the federal court might find simply on the basis of the allegations of the complaint that no triable constitutional issue was raised, and accordingly dismiss it on that ground. The third tier of review would be where the federal court finds the *allegations of the complaint* sufficient to state a constitutional claim, and accordingly requires further pleadings, discovery, and perhaps eventually a trial on the merits to determine whether the plaintiff can prove the allegations of its complaint.

> But this three-tiered analysis required by *Bell* seems to be wholly at odds with Rule 12(b) of the Federal Rules of Civil Procedure, which quite clearly contemplates only a two-tiered standard of review of a complaint on a motion to dismiss. As I understand Rule 12, it requires the federal court to make a legal determination of whether or not the allegations of the complaint state a claim upon which relief can be granted. Rule 12(b)(6). This is a question of law, and if the court concludes that they do not state such a claim, an order of dismissal will be entered. But if the court concludes that the allegations *do* state a claim, the defendant will be required to answer and the case go to trial unless settled. The trial and, at earlier stages of the case, summary judgment proceedings, are for the purpose of deciding disputed issues of material fact.

454 U.S. at 1160–61, 102 S.Ct. at 1034–35 (Rehnquist, J., dissenting) (emphasis in original) (footnote omitted). *See also Peacock v. Riggsbee,* 309 F.Supp. 542, 544 (N.D. Ga.1970) (Smith, J.) ("While courts must be careful to distinguish between dismissal for lack of jurisdiction and dismissal for failure to state a claim, . . . '[w]here neither the constitutional provision nor any act of Congress affords a remedy to any person, the mere assertion by a plaintiff that he is entitled to such a remedy cannot be said to satisfy federal jurisdictional requirements.' ") (Quoting *Screven County v. Brier Creek Hunting & Fishing Club,* 202 F.2d 369 (5th Cir.1953), *cert. denied,* 345 U.S. 994, 73 S.Ct. 1163, 97 L.Ed. 1402 (1953)).

■ In the case at bar, while plaintiff alleges "28 U.S.C. § 1343(3), in conjunction with 42 U.S.C. § 1983,"[2] as the jurisdictional predicate, Complaint ¶ 6(a), it appears that plaintiff alleges three federal constitu-

---

**2.** It appears evident that plaintiff is referring to 28 U.S.C. § 1343(a)(3) (Supp. IV 1980) (originally enacted as Act of December 29, 1979, Pub.L. No. 96–170, 93 Stat. 1284), which provides as follows:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

> To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing of equal rights of citizens or of all persons within the jurisdiction of the United States.

tional predicates: (1) fourteenth amendment property rights; (2) first amendment rights to free speech and association; and (3) fifth amendment just compensation or "taking" clause. Therefore, given *Bell* and *Suthoff*, this "court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact rising in the controversy." *Bell,* 327 U.S. at 682, 66 S.Ct. at 776.

### III.

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1976).

The legislative history of section 1983 indicates that the purpose of the Act was to override corrupting influence of the Ku Klux Klan and its sympathizers on the governments and law enforcement agencies of the southern states. See *Monroe v. Pape,* 365 U.S. 167, 174, 81 S.Ct. 473, 477, 5 L.Ed.2d 492 (1961). The debates show that a strong motive behind its enactment was a congressional concern that the state courts had been deficient in protecting federal rights. *See Mitchum v. Foster,* 407 U.S. 225, 241–42, 92 S.Ct. 2151, 2161–62, 32 L.Ed.2d 705 (1972); *Monroe,* 365 U.S. at 180, 81 S.Ct. at 480. As the Supreme Court stated in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980):

> In reviewing the legislative history of section 1983 in *Monroe v. Pape, supra,* the Court conferred that Congress had intended a federal remedy in three circumstances: where state substantive law was facially unconstitutional, where state procedural law was inadequate to allow full litigation on a constitutional claim, and where state procedural law, though adequate in theory, was inadequate in practice. In short, the federal courts could step in where the state courts were unable or unwilling to protect federal rights.

*Id.* at 100–01, 101 S.Ct. at 417–18 (citations omitted).

Given this historical backdrop, the Supreme Court has articulated that "in any section 1983 action the initial inquiry must focus on whether the two essential elements to a section 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1980).

With this background, the court will examine the complaint in the case at bar. Count I of the complaint has two thrusts. First, plaintiff says that defendants negotiated in bad faith and fraudulently led it into believing that either the lease would be renewed or the business would be bought at a fair price. Plaintiff says that because neither happened, it was forced to remove its operation in an unreasonably short time and was damaged thereby. Second, it is said that defendants' misconduct was a part of a conspiracy to cause plaintiff to sell its business and property at substantially less than fair market value.

As to the first, the court finds that the federal claim is immaterial. As to the second, the federal claim is insubstantial. *See Bell, supra; Walsh v. Louisiana H.S. Association,* 616 F.2d 152, 156 (5th Cir.1980).

The first theory may have a question of federal law lurking in the background, as most cases involving disputes with governmental entities do. It seems to the court, however, that state law preponderates and that no abuse of governmental power is actually alleged. *Compare Johnston v. Byrd,* 354 F.2d 982 (5th Cir.1965);

*Ohio Inns v. Nye,* 542 F.2d 673 (6th Cir. 1976); *Sanders v. Erreca,* 377 F.2d 960 (9th Cir.1967).

This first theory of Count I is in reality no more than an action for damages caused by torts of the defendants. Not every tort committed by state officials furnishes a basis for a 1983 action. *Williams v. Kelley,* 624 F.2d 695 (5th Cir.1980). It does matter whether the tort is a willful one, *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), or negligence, *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Neither section 1983 nor the fourteenth amendment is a font of tort law. *Hull v. City of Duncanville,* 678 F.2d 582, 585 (5th Cir.1982). The act must constitute a sufficiently egregious abuse of governmental power to be constitutionally tortious. *Hull, supra; Suthoff, supra.* A federal judge does not have the power to interfere in every dispute between a "state" landlord and its tenant simply because the treatment was harsh. *Lopez v. Phipps Plaza South,* 498 F.2d 937 (2d Cir.1974). It is difficult here to conceptualize what power or authority that is unique to government function was allegedly being abused. The status of the individual defendants as employees, agents, and instrumentalities of the state does not alone mean that they were acting under color of state law. Random and unauthorized acts by a state official not pursuant to established procedure does not alone supply the element of "color of state law." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

The court cannot conceive of what power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," *Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), has been abused. The defendants were acting purely in a proprietary way with a company which would do business with the state. In other words, this is a tort count arising out of a business relationship which does not become a federal civil rights case because of the mere fortuity that one of the parties was a state agency. As the Fifth Circuit, in an en banc 1971 decision, instructed:

> "Mere violations of a State statute do not infringe the federal Constitution." *Snowden v. Hughes,* 321 U.S. 1 [64 S.Ct. 397, 88 L.Ed. 497] (1944); *cf. Gentry v. Howard,* 288 F.Supp. 495 (E.D.Tenn. 1968). Even though it is patent that the amorphous and protean contours of substantive due process under the Fourteenth Amendment extend to all citizens and in all sorts of conditions and circumstances, it is equally axiomatic that federal jurisdiction under section 1343(3) and 42 U.S.C.A. § 1983 cannot be extended to that purely local squabble by the mere invocation of the generalized protection which these words of the amendment confer.
>
> The Constitution's deeply imbedded concepts of federalism demand that we refuse a procedure of statutory construction that would put such a literal gloss of the words of sections 1343 and 1983 as would kill the spirit the founding father quickened when the people of the sovereign states ceded sufficient governmental power to form a sovereign union. [Citation omitted]. If we were to distort sections 1343 and 1983 to vest federal courts with jurisdiction over the uniquely local substantive matters which this case presents, we would not only impair our ability to consider the vast array of cases that properly belong in federal forums but, as surely as sunrise, we create yet another and an unnecessary interference with orderly State processes.
>
> Only if a false vanity duped us into supposing that the quality of justice in the federal courts system is somehow superior to that dispensed by the State, could we justify such an incursion into intrastate affairs. To the contrary, State courts are best equipped to determine the meaning and the scope of State statutes and local policies. . . .

*McDowell v. Texas,* 465 F.2d 1342, 1346 (5th Cir.1972) (en banc), *cert. denied,* 410 U.S. 943, 93 S.Ct. 1371, 35 L.Ed.2d 610 (1973).

The second theory in Count I alleging a conspiracy to take property without just compensation is unavailing also. No property of the corporate plaintiff was taken. The leasehold had expired and no right to hold over is alleged. The complaint indicates that other personalty was removed and not taken by the state. To maintain successfully a conspiracy action under 42 U.S.C. § 1983, there must have been an actual denial of due process. *Slavin v. Curry,* 574 F.2d 1256, 1261 (5th Cir. 1978). Here, more must be alleged than the formation of an illegal agreement. It must be claimed that the object was achieved in some significant way through overt acts committed. The object here was to obtain property without just compensation. As no property was obtained at all, the civil rights conspiracy was not complete. In this, the case differs from *Suthoff v. Yazoo County Industrial Development Corp.,* 637 F.2d 337 (5th Cir.1981). Also, because no property was taken, there is no issue respecting the rights attendant to "pre" or "post" deprivation hearings. *Compare McCulloch v. Glasgow,* 620 F.2d 47 (5th Cir.1980).

Count II of the complaint, though captioned as interference with contract rights, is an action seeking redress for interference by the defendants with plaintiff's owner's and plaintiff's independent contractor's right of freedom of association. In some detail the complaint spells out the plight of an Association employee who detected some allegedly improper activities within the Association and who was discharged after he blew the whistle. It is said that the bad acts in the negotiation for a lease renewal or for the sale of the business were "motivated by Plaintiff and Rilling's (plaintiff's president) association with Peterson (the discharged employee)." Complaint, ¶ 69. Two points should be noticed. First, the complaint does not allege that the association was for the purpose of publicizing or otherwise speaking out against improper conduct. The complaint, broadly read, merely shows that Rilling and Peterson met, that the defendants knew of these meetings because of surveillance of Peterson, and that they wished to punish Rilling for the association or to intimidate Peterson. Second, Rilling is not a party to this action, nor is Peterson. Only these natural persons can maintain an action for interference with the right of association. *Hague v. Committee for Industrial Organization,* 307 U.S. 496, 514, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939). Further, although there are limits placed on what adverse action a state may take against an employee who maintains associations thought undesirable by the state [*see Tanner v. McCall,* 625 F.2d 1183 (5th Cir.1980)], it is not at all clear that the state may not refuse to do business with an independent contractor solely because it disapproves of the contractor's associations. *Fox & Company v. Schoemehl,* 671 F.2d 303 (8th Cir.1982).

As to any allegations regarding a deprivation of contract rights, again there is no federal nexus. While Article I, Section 10 of the United States Constitution commands that "No State shall ... pass any ... law impairing the Obligation of Contracts ...," plaintiff fails to allege any state law which impaired any contract. *See generally,* L. Tribe, *American Constitutional Law* §§ 9–5, 9–6 (1978). Thus, this constitutional provision is not applicable to individual conduct by persons acting under color of state law. *Poirier v. Hodges,* 445 F.Supp. 838, 842 (N.D.Fla.1978).

## CONCLUSION

Taking the allegations of the complaint as true, the complaint fails to state a section 1983 claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

Plaintiff's Motion for Leave to Amend Complaint is GRANTED. Defendants' Motion to Dismiss is hereby GRANTED.