**STONE MOUNTAIN GAME RANCH, INC., Plaintiff-Appellant,**

v.

**George M.D. (John) HUNT, III, and George J. Willis, and the Stone Mountain Memorial Association, d/b/a Stone Mountain Park, Defendant-Appellees.**

No. 83–8560.

United States Court of Appeals, Eleventh Circuit.

Nov. 13, 1984.

Archer D. Smith, III, Atlanta, Ga., for plaintiff-appellant.

Daniel M. Formby, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellees.

Before TJOFLAT and HATCHETT, Circuit Judges, and GARZA *, Senior Circuit Judge.

PER CURIAM:

Stone Mountain Memorial Association (Association) operates a state park in Georgia called Stone Mountain Park. In 1961, Association gave Stone Mountain Game Ranch, Inc. (Game Ranch) a twenty-year lease on ten acres in the park, so that Game Ranch could operate an animal attraction. (Game Ranch charged visitors an admission fee to enter the park and observe the animals.) The lease's expiration date was December 31, 1982. In October 1981, Game Ranch informed Association that it wanted to renew the lease; later, as an alternative, it negotiated with Association to purchase its business.

As matters turned out, Association neither renewed the lease nor purchased Game Ranch's business, and on December 31, 1982, Game Ranch, as required by the lease, vacated the park.

■ Game Ranch sued Association, the chairman of its board of directors, George M.D. Hunt III (Hunt), and its general manager, George J. Willis, in the district court, alleging in more detail the foregoing facts.[1] In its complaint, Game Ranch alleged, in addition, that Association was a state entity chartered by the Georgia General Assembly, that the defendants at all relevant times were acting under color of state law, and that the defendants by not renewing its lease or buying its business had deprived it of its property without due process of law, in violation of the fourteenth amendment. Game Ranch, invoking 42 U.S.C. § 1983 (1982),[2] sought compensatory money damages for the value of the property rights taken. It also sought punitive damages, alleging that the defendants' conduct was intentional, thus amounting to fraud.

The district court dismissed Game Ranch's complaint for failure to state a section 1983 claim for relief.[3] We affirm.

■ In affirming the district court,[4] we need not decide whether Association is a state entity, whether it is immune from suit under the eleventh amendment, or whether, in their dealings with Game Ranch, the defendants were acting "under color of state law." We decide this case on one point: Game Ranch neither alleges the deprivation of a property interest protected

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Game Ranch's complaint, which was rather inartfully drawn, was couched in two counts. In each count, and contrary to Fed.R.Civ.P. 10(b), Game Ranch mixed breach of contract and tort law concepts, contending, intermittently, for example, that the defendants' conduct in negotiating a possible lease renewal or the possible purchase of Game Ranch's business was a "breach of the lease," "fraudulent," or "intentional," or in derogation of the parties' "contractual relationship." Game Ranch also mixed its allegations of damages. Boiled down to its essentials, Game Ranch presented nothing more than a garden variety state law breach of (lease) contract claim, claiming, on the one hand, that defendants' conduct amounted to a breach of contract and, on the other, a tort.

2. § 1983 Civil action for deprivation of rights
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

3. *Stone Mountain Game Ranch, Inc. v. Hunt,* 570 F.Supp. 238 (N.D.Ga.1983).

4. Before a federal court can dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6), it must determine that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). We treat all of the well-pleaded allegations of the complaint as true. *Miree v. Dekalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

by the due process clause of the fourteenth amendment nor a constitutional tort.

■ It is well settled that, in the fourteenth amendment due process context presented here, we look to state law, in this case the law of Georgia, to determine whether the claimant has a protected property interest. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir. 1982). The law of Georgia defining protected property interests is expressed in Georgia's statutes and in its common law, as declared by the state's courts.

Georgia statutes provide that after termination of a lease, the property interest in the leasehold lies with the lessor. Ga.Code Ann. § 44–6–102 (1982);[5] *Hill Aircraft and Leasing Corp. v. Fulton County, Ga.,* 561 F.Supp. 667, 678 (N.D.Ga.1982), aff'd, 729 F.2d 1467 (11th Cir.1984) (lessee had no property interest after lease expired). If, at the expiration of the lease, the tenant fails to vacate the premises, the landlord may invoke a summary remedy to evict the tenant. Ga.Code Ann. § 44–7–10 (1982).[6]

Additionally, Georgia courts consistently hold that a lessee has no right to a lease renewal absent a valid enforceable agreement to renew with definite and certain terms. Absent such an agreement, the parties, in negotiating a possible renewal, occupy essentially the same position they would if they were absolute strangers, with no extant lease between them.

■ In contemplating whether to renew a lease, a landlord has the right to bargain for the best possible rent, and terms, it can obtain. (Here, the individual defendants had a fiduciary duty to their corporate employer to do so.) The landlord should, of course, expect the tenant to do likewise. If it fails to negotiate a favorable renewal, the landlord has the absolute right to get its property back when the lease expires. The tenant, on the other hand, has the right not to renew. If it desires not to renew, or if, as here, it wishes to renew but is unable to negotiate a deal, the tenant has an obligation to quit the premises and should expect the landlord to enforce that obligation. In sum, the tenant has no property right when renewal negotiations fail. *See, e.g., Harris v. Trippi,* 209 Ga. 369, 72 S.E.2d 704, 705 (1952) (proposal to lease is not mutually binding); *Gibson v. Needham,* 96 Ga. 172, 22 S.E. 702, 703 (1895) (agreement to lease in the future does not renew a lease);[7] *McCormick v. Brockett,* 167 Ga.App. 325, 306 S.E.2d 344, 345 (1983) (lease renewal provision must be definite and certain to be enforceable); *John Bleakley Ford, Inc. v. Estes,* 164 Ga.App. 547, 298 S.E.2d 270, 272 (1982) (despite discussions between tenant and landlord about entering into a new lease agreement and tenant's foregoing a valuable alternative business location, tenant could not recover damages in tort be-

5. **Ga.Code Ann. § 44–6–102 (1982). "Lease" defined.** "The grant by one person to another of an estate for years out of his own estate, with reversion to himself, is usually termed a lease...."

6. **Ga.Code Ann. § 44–7–10 (1982). Delivery of possession at end of term; summary remedy.** "The tenant shall deliver possession to the landlord at the expiration of his term; and, if he fails or refuses to do so, a summary remedy ... is given to the landlord."

7. In *Gibson v. Needham,* 96 Ga. 172, 22 S.E. 702 (1895), for example, the tenant told the landlord he would not buy the liquor business on the leasehold property unless he could lease the property for another year, commencing from the expiration date of the current lease. The

landlord replied: "All right, you shall have it. Go ahead and buy him out." *Id.* at 173, 22 S.E. at 703. The landlord assured the tenant the rent would be "reasonable." Relying upon the landlord's statements, the tenant purchased the business on the leasehold. Thereafter, he tried several times to close the renewal with the landlord by attempting to deliver money for rent. The parties failed to consummate a renewal agreement, however, and the landlord rented the property to another for a term beginning upon the expiration of the current lease. Sidestepping the issue of landlord liability for damages, the court held that tenant could not retain possession of the property after the expiration of the lease.

cause an agreement to agree at a future date is not binding and tenant was not justified in relying upon landlord's assurances he would obtain a lease); *Peter E. Blum & Co. v. First Bank Building Corp.*, 156 Ga.App. 680, 275 S.E.2d 751, 755 (1980) (landlord is not estopped from declaring that a lease is not renewed and tenant has no right to remain on the leasehold after expiration of the lease, despite oral representations and a letter referring to a proposed lease renewal and tenant's reliance resulting in foregone opportunities); *Russell v. City of Atlanta*, 103 Ga. App. 365, 119 S.E.2d 143, 144 (1961) (a letter showing intention of city to lease a city auditorium to proprietor of an antique show has no legal effect; tenant failed in its breach of contract action); *Woodward v. Stamos & Stratos*, 24 Ga.App. 183, 100 S.E. 232, 232 (1919) (landlord's verbal promise to renew a lease and tenant's reliance thereupon does not create a lease contract).

■■■ Similarly, a tenant has no enforceable right to sell its business operated upon the leasehold to the landlord as an alternative to obtaining a lease renewal. The tenant also has no property interest in having the landlord purchase its business. These rules apply whether the landlord is a private party or a government entity. *Coyne-Delaney Co. v. Capital Development Bd.*, 616 F.2d 341, 342–43 (7th Cir.1980) (no one has a right to sell to the government that which the government does not wish to buy). *Cf. Sanders v. Erreca*, 377 F.2d 960, 963 (9th Cir.1967), *cert. denied*, 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968) (a private person has no right to compel a sovereign to take the person's property for public use in return for just compensation).

■■ Game Ranch entered its negotiations with Association with no right to a lease renewal or, alternatively, to a successful sale of its business operation to Association. On the contrary, Game Ranch had a contractual obligation to quit the leased premises by December 31, 1982, the date its lease expired. In contrast, Association, as landlord, had no obligation to consummate an agreement with Game Ranch. Rather, Association had an affirmative duty to the State to get the best deal it could for Stone Mountain Park. At no time, before or after the expiration date, according to the operative facts Game Ranch's complaint alleged, did the parties have a meeting of the minds and consummate a binding, enforceable contract. *Cox Broadcasting v. National Collegiate Athletic Association*, 250 Ga. 391, 297 S.E.2d 733, 737 (1982). Rather, the parties remained far apart, with nothing more than offers and counter offers lying on the bargaining table. The factual allegations of Game Ranch's complaint plainly indicate that Game Ranch had only a hope it could reach an agreement with the Association, either to renew the lease or purchase the business, with terms acceptable to Game Ranch. Such an "abstract need or desire" or a "unilateral expectation" of a benefit does not rise to the level of a constitutionally protected interest. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See Winkler v. County of Dekalb*, 648 F.2d 411, 413 (5th Cir. Unit B 1981);[8] *Wells Fargo Armored Service v. Georgia Public Service Commission*, 547 F.2d 938, 940 (5th Cir.1977).[9]

■■ Game Ranch's complaint claims, alternatively, that the defendants intentionally delayed negotiations, and ascribes to Hunt and Willis an array of ill will, bad motives,[10] and tortious miscon-

**8.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the Former Fifth Circuit handed down after September 30, 1981.

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of

the former Fifth Circuit handed down prior to October 1, 1981.

**10.** For example, Game Ranch claims that defendants Hunt and Willis broke off negotiations with Association because Game Ranch's president met with an Association employee whom Association later fired purportedly for "blowing the whistle" on alleged skullduggery involving Hunt and Willis and thus tortiously interfered

duct, including fraud, deceit, and misrepresentation. First, inquiry into the state of mind of a defendant in a section 1983 action is wholly immaterial and irrelevant absent a showing of deprivation of a constitutionally protected right. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Second, in order to maintain an action in tort, the defendant must have breached a duty to the plaintiff. *Knight v. Atlantic Coast Line Railroad Co.*, 4 F.Supp. 713, 714 (S.D. Ga.1933), *aff'd*, 73 F.2d 76 (5th Cir.1934). *Cf.* Ga.Code Ann. § 51–1–1 (1982).[11] That Association's decision not to renew the lease or purchase Game Ranch's business may have been motivated by ill will did not, under Georgia law, transform its decision into a tort. As we have pointed out, *supra*, Association, as landlord, had an absolute right to not renew Game Ranch's lease or purchase its business. Game Ranch, on the other hand, had no right to rely on the possibility of a lease renewal or successful sale of its business; rather, it had a duty to quit the premises when its lease expired. The injuries Game Ranch allegedly suffered, when it was forced to relocate in a less favorable business environment, were of its own making; by failing to anticipate and prepare for the possibility that Association would not renew or purchase its business, Game Ranch seriously damaged its bargaining position and, as it should have expected, rendered itself incapable of negotiating a satisfactory deal.

In sum, taking the factual allegations of Game Ranch's complaint as true, we conclude that the defendants breached no duty, created by contract, tort, or Georgia property law, to Game Ranch. *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981); *see Suthoff v. Yazoo County*, 637 F.2d 337, 340 (5th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 316 (1982), and — U.S. —, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984); *Williams v. Kelley*, 624 F.2d 695, 698 (5th Cir.1980), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981).

In that Game Ranch's claims of unconstitutional deprivation are predicated on the defendants' breach of such a duty, its claims must fall. The judgment of the district court is, accordingly,

AFFIRMED.

---

11. **Ga.Code § 51–1–1. Tort defined.** "A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied. A tort may also be the violation of a public duty if, as a result of the violation, some special damage accrues to the individual."

with Game Ranch's right to contract with Association. Game Ranch contends, in addition, that Hunt's and Willis' conduct violated its rights under the first amendment. This contention is frivolous.