**Robert B. MOWREY, Plaintiff,**

v.

**Dr. E. ROMERO, M.D., et al.,
Defendants.**

**No. 90–185–Civ–J–16.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 16, 1990.

---

Robert B. Mowrey, pro se.

Kimberly Jeanene Tucker, State of Fla., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## OPINION

### JOHN H. MOORE, II, District Judge.

#### I. Status

Plaintiff, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983. The Court, on August 14, 1989, ordered Plaintiff to file an amended complaint. Plaintiff filed an amended complaint on August 29, 1989. He names as the Defendants Dr. E. Romero and Dr. Hanoch Talmon, emergency room doctors at the Reception and Medical Center.

#### II. Plaintiff's Allegations

On Friday, December 23, 1988, between 8:30 and 9:00 A.M. at Apalachee Correctional Institution, Plaintiff was punched in the mouth by inmate Gary Travis. Plaintiff's Amended Complaint at 2a. Plaintiff was seen immediately at 9:35 A.M. in the prison's medical department by Dr. Hsu. *Id.* Thereafter, he was seen in the prison's dental clinic at approximately 10:00 A.M. *Id.* X-rays were taken, and it was confirmed that Plaintiff had "a fracture of the left angle of mandible." *Id.* Dr. David Adams recommended that Plaintiff be transferred to the Reception and Medical Center to see an oral surgeon. *Id.* That afternoon, Plaintiff was transferred to the Reception and Medical Center. *Id.* at 2b. Immediately after his arrival at the Reception and Medical Center, Plaintiff was taken to the emergency room and examined. *Id.* Additional x-rays were taken, and a shot of antibiotics to reduce the chance of infection was given. *Id.* It was further confirmed that he had "a fracture of the left angle of mandible." *Id.*

Instead of being admitted to the prison's hospital for treatment, he was placed in general population in a regular dormitory. *Id.* On Saturday, December 24, 1988, Plaintiff was examined again by a second doctor in the prison's emergency room. *Id.* Plaintiff was again ordered to return to the regular dormitory. *Id.* On Sunday, December 25, 1988 (Christmas Day), nothing was done. *Id.* On Monday, December 26, 1988, Plaintiff was examined by Dr. Isrel Winikor, a dentist at the Reception and Medical Center, who ordered more x-rays. *Id.* at 2c. Later, Plaintiff was admitted to the prison's hospital ward. *Id.* On Tuesday, December 27, 1988, Plaintiff was taken to Shands Teaching Hospital in Gainesville, Florida. *Id.* At Shands, more x-rays were taken along with other tests for surgery on December 28, 1988. *Id.*

Plaintiff claims there was a "considerably long delay in receiving medical treatment." Specifically, he states that Defendants Romero and Talmon were negligent in three ways: (1) they did not order that Plaintiff be admitted to the prison's hospital where he could be put under observation and have emergency needs taken care of; (2) they did not attempt to support or immobilize Plaintiff's broken jaw; and, (3) they did not order that Plaintiff be taken immediately to an outside hospital for emergency treatment when there was nothing they could do for Plaintiff's injury.

#### III. Defendants' Motions to Dismiss

Defendant Romero filed a Motion to Dismiss on October 17, 1989. Plaintiff responded on November 3, 1989. On June 19, 1990, Defendants Romero and Talmon filed an Amended Motion to Dismiss.

Plaintiff responded on July 11, 1990, and again on August 16, 1990.

■■ In determining whether to grant a Fed.R.Civ.P. 12(b)(6) motion, the Court primarily considers the allegations in the complaint. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to Plaintiff and its allegations are taken as true. 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 (1969). Dismissal is appropriate only if the District Court, reading the complaint, might conclude with assurance that it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Stone Mountain Game Ranch, Inc. v. Hunt*, 746 F.2d 761, 763 n. 4 (11th Cir.1984) (citations omitted); *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). Also, *pro se* complaints are to be read with especial liberality. *Dickinson v. Chief of Police*, 499 F.2d 336, 337 (5th Cir.1974).

In assessing Plaintiff's claims of cruel and unusual punishment, the Court must consider "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Cruel and unusual punishment, however, only consists of that punishment which involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). Deliberate indifference to serious medical needs of prisoners constitutes "the unnecessary and wanton infliction of pain." *Id.*

■ The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of the defendants. The Supreme Court has recently had cause to consider the common law meaning of "wanton" in some detail:

"Wanton means reckless—without regard to the rights of others.... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure." 30 American and English Encyclopedia of Law 2–4 (2d ed. 905) (footnotes omitted).

*Smith v. Wade*, 461 U.S. 30, 39–40 n. 8, 103 S.Ct. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983).

■ The indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). However, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

To state a valid claim of medical mistreatment under the eighth amendment, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (footnote omitted).

■ Mere negligence or malpractice does not violate the eighth amendment. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. Medical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the eighth amendment. *Green v. Carlson*, 581 F.2d 669, 675 (7th Cir.1978), *aff'd* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15.

■ Here, Plaintiff admits, in his Amended Complaint, that he was given immediate medical attention at Apalachee Correctional Institution on December 23, 1988. Plaintiff's Amended Complaint at 2a. Further, he concedes that he was

transferred to the Reception and Medical Center that same afternoon and was given additional x-rays and antibiotics. *Id.* at 2b. Additionally, Plaintiff asserts that, on December 24, 1988, he "was examined again" by a second doctor in the prison's Emergency Room." *Id.* He contends that nothing was done on Christmas Day. *Id.* Then, on December 26, 1988, Dr. Winikor, a dentist, examined Plaintiff and took more x-rays. *Id.* at 2c. Plaintiff was admitted to the prison's hospital ward on December 26, 1988. *Id.* And, on December 27, 1988, Plaintiff was taken to Shands Teaching Hospital. *Id.*

Plaintiff is merely dissatisfied that Defendants Romero and Talmon administered medication, examined him, and took x-rays, but did not immobilize the jaw, set the jaw, and admit him to an outside hospital immediately for surgery. Plaintiff contends there was a four-day delay (Friday, December 23, 1988–Monday, December 26, 1988). He is of the opinion that x-rays and medication are not treatment. Plaintiff's Amended Response, filed August 16, 1990.

This Court is of the opinion that there was not a deliberate indifference to a serious medical need. Plaintiff received medical attention from the Defendants on December 23 and 24, 1988. With regard to Christmas Day, Plaintiff does not allege that he requested medical treatment on that day. Further, he does not attribute any failure to treat him on this date to either Defendant Romero or Defendant Talmon. Finally, Plaintiff received medical attention from Dr. Winikor on December 26, 1988. Plaintiff's contentions, here, merely reflect Plaintiff's dissatisfaction with the medical attention he *did receive* during this four-day period. However, Plaintiff's conclusory allegations regarding Defendants Romero and Talmon's negligence in their administration of medical care toward Plaintiff does not arise to the level of a constitutional violation. Therefore, Defendants' Amended Motion to Dismiss will be granted, and Plaintiff's Amended Complaint will be dismissed.