Jusein MUSTFOV, Ray Mohyde, Henry Sammarco, Robert C. Britt, Barry Weitzenfeld, Dennis Becker, Miodrag Stojadinovich, Dragan Petrovic, Randall Schlicter, John A. Lindsey, Jim Guthrie, Lawrence Frowick, Frank Barberis, Neb Tarailo, Wilfred Brodeur, Donald Gardella, John Miller, Ivan Nikolov, Ronald Courtney and Ace Limousine, Inc., Plaintiffs,

v.

Fred RICE, Superintendent of Chicago Police Department; Paul Jankowski, Commander; Jesse Madison, Vehicle Commissioner Consumer Service Department; Tony Olivieri, Deputy Commissioner; Jesse Blackman, Deputy Commissioner; and Dan Welter, Chicago Corporation Counsel, individually and in their official capacities; and the City of Chicago, Defendants.

No. 86 C 3905.

United States District Court,
N.D. Illinois, E.D.

March 30, 1987.

Michael Smith, Schaumburg, Ill., for plaintiffs.

Robert W. Fioretti, Asst. Corp. Counsel, Albert C. Maule, Hopkins & Sutter, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This action has been brought by nineteen Illinois livery and taxicab drivers ("Drivers") and Ace Limousine, Inc. ("Ace"), an Illinois limousine service company, against the City of Chicago and six city officials individually and in their official capacities ("City Defendants") under section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982) ("1983"), and the Sherman Act, §§ 1–2, 15 U.S.C. §§ 1–2 (1982). Currently before the Court is the City Defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) & (6). For the reasons noted below, we grant that motion in part and deny it in part.[1]

Plaintiffs include livery or taxicab drivers either licensed by the City or licensed by the State of Illinois to drive public passenger livery vehicles. Two additional plaintiffs are licensed suburban taxicab drivers. A corporate plaintiff, Ace, is an Illinois corporation which provides livery service to clients to Chicago and the suburban area. Plaintiffs have raised a number of constitutional challenges to the enforcement of Chapter 28 of the Chicago Municipal Code, "Public Passenger Vehicles." These claims arise because of the manner the ordinances are allegedly enforced at the O'Hare and Midway Airports. Briefly, plaintiffs contend that they are engaged in legitimate business at the O'Hare Airport but due to increased enforcement of the solicitation ordinances they are no longer able to conduct their business. While

---

1. For purposes of a motion to dismiss for failure to state a claim, the Court takes all the well-pleaded allegations of the complaint as true and views them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Furthermore, the motion to dismiss should only be granted if it appears beyond a doubt that plaintiff can prove no set of facts which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

plaintiffs attack the solicitation prohibition of nonprearranged fares at the airport, they also contend that they have been prevented from picking up their prearranged fares. It is clear that the ordinances do not prohibit plaintiffs from picking up their prearranged fares. Plaintiffs also seek to test the validity of an arrangement that the City of Chicago has made with Continental Air Transport Company ("Continental") and Airways Rental. The alleged agreement allows Continental to park in designated areas near Chicago airport terminals which are apparently not available to the general public, and Continental is allowed to maintain a booth within the O'Hare Airport in order to solicit travelers for transportation to the City of Chicago and the suburban area. Airways Rental, a limousine service, is also allowed to maintain a booth inside of the O'Hare terminal, apparently to solicit travelers as well.

## I. *Preliminary Matters*

Although impaired by lack of clarity, plaintiffs' complaint raises challenges to the ordinances, the enforcement of the ordinances and the exclusive arrangements based on due process, Fourth Amendment, equal protection, First Amendment, antitrust, commerce clause and contract clause grounds. We will address each ground and additional facts relating to that ground separately. As an initial matter, City Defendants raise three grounds which they contend bar our inquiry altogether. City Defendants contend that we have no subject matter jurisdiction under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny; that plaintiffs' claims are barred by the doctrine of res judicata; and that plaintiffs' claims are barred by the statute of limitations.

### A. *Younger Abstention*

City Defendants argue that under *Younger* progeny *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the plaintiffs must have raised any challenges they may have had to the constitutionality of their arrest and prosecution under the ordinances in the state court proceedings where their guilt

was determined before they can proceed in federal court. There is no allegation that there are any pending state court proceedings in this case. Nor is there any allegation that plaintiffs raised any constitutional defenses to their convictions. In *Huffman* and in *Foster v. Zeeko,* 540 F.2d 1310 (7th Cir.1976), another case cited by City Defendants, the constitutional claims that were held later barred from being raised in federal court, were first raised in the state court proceeding. In each case, the plaintiffs chose not to appeal the state trial court's rejection of the constitutional claims, and instead proceeded directly to federal court. We do not think that these cases stand for the proposition that unraised constitutional challenges are forever barred under the *Younger* abstention doctrine.

 Nevertheless, when a genuine threat of state prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal rights under 42 U.S.C. § 1983, *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), and provided the plaintiff does not seek to annul the results of a previous state trial, but seeks prospective relief from further prosecution under a statute alleged to violate constitutional rights, failure to seek state appellate review of criminal convictions does not bar relief in federal court. *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (distinguishing *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)).

Thus, to the extent that plaintiffs seek injunctive and declaratory relief, *Huffman* would not apply in this case even if *Huffman* did apply to unraised constitutional arguments.[2] If *Huffman* did bar unraised constitutional challenges, then only the plaintiffs' claims for damages for being arrested and convicted under an unconstitutional ordinance would be barred. Because under *Wooley* a federal court may still grant injunctive relief against the enforcement of a state statute or city ordi-

---

**2.** A position we specifically reject.

nance through threatened criminal proceedings where the federal plaintiff has been convicted several times for the same conduct as long as the federal plaintiff does not seek in any way to undo the results of the unappealed convictions. S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 5.13 n. 161 (2d ed. 1986). Plaintiff drivers allege they have been arrested for, and found guilty of, violating the ordinances. Although they have not alleged repeated convictions, we find the allegations on the whole imply that they have been arrested repeatedly and are threatened with further arrests. Additionally, only a few of the plaintiffs' complaints relate to the convictions themselves. The majority of the claims relate to the procedures under which the ordinances are enforced, the exclusive arrangement with Continental and Airways Rental and the impact of the ordinances on plaintiffs' contracts and interstate commerce. Even if plaintiffs had not been arrested and convicted under the ordinances, we find that allegations in the complaint are sufficient to give plaintiffs standing to seek declaratory and injunctive relief.

### B. *Res Judicata*

City Defendants next argue that all of plaintiffs' claims are barred by the doctrine of res judicata. Because we are to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the states from which they emerged, *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), we must look to Illinois law to determine if any of plaintiffs' claims are barred under the doctrine of res judicata, or claim preclusion. Illinois follows the traditional res judicata rule:

[A] final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.... The doctrine of

*res judicata,* in all cases where the second suit is upon the same cause of action and between the same parties or their privies as the former action, extends not only to the questions actually litigated and decided, but to all grounds of recovery or defense which might have been presented.

*Kirk v. Board of Education,* 811 F.2d 347, 352 (7th Cir.1987) (citing *People v. Kidd,* 398 Ill. 405, 75 N.E.2d 851, 853–54 (1947)).

Thus, the doctrine of res judicata will bar all grounds of recovery or defenses that might have been presented. Because the earlier state actions in this case were either criminal or quasi-criminal and not civil actions, we are not concerned with claims that the plaintiffs might have presented, but rather with defenses to their prosecution that they might have presented. Plaintiffs do not specifically identify the grounds under which they were convicted, stating only that "[a]ll of the individual Plaintiffs have been arrested for, and found guilty of, violating the respective sections of Chapter 28 of the Chicago Municipal Code." (Complaint ¶ 7). Generally, affirmative defenses should be raised in defendant's answer and resolved by way of a motion for summary judgment. 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1277 (1969). If, however, the facts raising the affirmative defense appear on the face of the complaint, then it may be resolved in a motion to dismiss. *Id.* This is not the case in this situation. Plaintiffs' complaint does not detail exactly which sections of the ordinance they were convicted of. Therefore, we cannot address this res judicata claim at this stage in the proceeding.[3]

### C. *Statute of Limitations*

Additionally, City Defendants attempt to raise a statute of limitations bar at this stage. Because the complaint does not raise any facts which would indicate when the plaintiffs were convicted and subjected to the ordinances, we cannot address the

---

**3.** As we mentioned earlier, however, in conjunction with the abstention claim, the majority of plaintiffs' claims do not specifically relate to the

convictions. To the extent the claims do not relate to the convictions, res judicata cannot bar them now.

statute of limitations issue at this stage. *Accord Stewart v. RCA Corp.*, 790 F.2d 624 (7th Cir.1986).[4]

## II. *Motion to Dismiss Individual Defendants*

■ The individual defendants contend that this action against them must be dismissed both individually and in their official capacity because the plaintiffs have failed to allege that the officials were personally responsible for the constitutional deprivations, or that the individual defendants failed to properly supervise the procedures used by the employees enforcing the unconstitutional ordinances. "A plaintiff may establish personal responsibility 'if the official acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent.'" *Chapman v. Pickett*, 801 F.2d 912, 917 (7th Cir.1986). As for the liability of supervisors, "under certain circumstances supervisors may be personally liable for failing to act when they have knowledge of a constitutional deprivation." *Id.* at 918. The knowledge that is needed to establish liability is not only that a constitutional deprivation exists but also that the supervisor's personal action is necessary to set it right. *Id.* A review of the complaint reveals that plaintiffs have not alleged that officials were personally responsible, nor that they failed to supervise. Therefore, because there are no allegations that the individual defendants are personally responsible for the plaintiffs' alleged constitutional deprivations or that they had personal knowledge of the violations, we must dismiss this action as to the individual defendants. This does not mean that we are also dismissing this action against the individual defendants in their official capacity. When suit is filed against defendants in their official capacities, the action against the officials is merely another form of the claim against the government entity itself. *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978).

## III. *MOTION TO DISMISS THE CITY OF CHICAGO*

■ The City contends that the plaintiffs' § 1983 claims against the City for the alleged constitutional violations must be dismissed because the plaintiffs failed to allege that the violations arose from an official policy or practice of the City. Under *Monell*, "[l]ocal governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, *ordinance*, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690–91, 98 S.Ct. at 2036–36. Plaintiffs have alleged that the actions complained of in this case were all taken in order to implement and execute the Public Passenger Vehicle Ordinance and pursuant to a city contract with Continental and Airways Rental. We find this sufficient under *Monell*. To the extent that plaintiffs also challenge actions by the police in enforcing the ordinances, actions which plaintiffs allege effectively bar them from picking up legitimate prearranged fares, we find plaintiffs have alleged a sufficient pattern that supports an inference of a policy or custom on the part of the police to enforce the ordinances in such a way as to prevent drivers from picking up prearranged passengers. "To establish a municipal policy or custom, the plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy; alleging one specific incident in which plaintiff suffered a deprivation will not suffice." *Henry v. Farmer City Bank*, 808 F.2d 1228, 1237 (7th Cir.1986).

---

**4.** We note, however, that City Defendants' argument that plaintiffs are barred by the statute of limitations because the ordinances have been enacted for over two years is highly specious. If the statutes are unconstitutional, it would seem that it is the application of the statute to a particular individual that would trigger the appropriate time period, and not the date of enactment.

## IV. *MOTION TO DISMISS EACH SUBSTANTIVE CHALLENGE*

### A. *Equal Protection Challenges*

Plaintiffs raise at least three challenges under the Fourteenth Amendment's equal protection clause. First, they allege that "Defendants' inconsistent policy of arrests of livery and taxicab drivers at O'Hare Airport, while no treatment is imposed upon drivers in a like situation at Midway Airport violates Plaintiffs' equal protection of the law." (Complaint ¶ 18). The plaintiffs in their memorandum of law indicate that by this allegation they are referring to the fact that when arrests under the ordinances occur at O'Hare, the plaintiffs and others arrested are detained for long periods of time, but that at Midway Airport, those arrested are only issued a citation and released.

Plaintiffs' second equal protection challenge states: "They [the ordinances] deny limousine drivers at O'Hare equal protection of law in that Continental Bus drivers are permitted to park in designated areas near the terminals and are allowed booths within O'Hare Airport in order to solicit travelers for transportation to the City of Chicago and the suburban area. They further allow Airways Rental, a known limousine service, to maintain a booth inside O'Hare terminals." (Complaint ¶ 19D).

Plaintiffs' third equal protection challenge is based on alleged reverse discrimination in the issuance of public passenger licenses: "Plaintiffs are being subjected to reverse discrimination in that the issuance of public passenger licenses in the City of Chicago are being made primarily to minorities, in violation of equal protection laws." (Complaint ¶ 19H).

Plaintiffs appear to make a fourth equal protection challenge in their complaint: "They [the ordinances] allow police officers the arbitrary ability to prohibit transportation of suburban residents into the City of Chicago, but do not restrict city licensed limousines or taxi cabs from going into the suburban areas, thereby setting up trade barriers." (Complaint ¶ 19I). We are going to reject this equal protection challenge outright, as it directly contradicts the ordinance which states: "Nothing in this chapter shall be construed to prohibit any public passenger vehicle from coming into the city to discharge passengers accepted for transportation outside the city." Chicago Municipal Code ch. 28 § 28–3. *Accord* § 28.1.

■ Unless a city ordinance challenged as violating the equal protection clause involves a suspect classification or a fundamental right, the regulation must be upheld if the classification is rationally related to a legitimate governmental interest. *Vaden v. Village of Maywood*, 809 F.2d 361, 365 (7th Cir.1987) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976)). The parties in this case concede that the appropriate standard of review is the rational relation test. Therefore, in reviewing this ordinance, we must keep in mind that "[s]tates [and cities] are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude." *Vaden*, at 365 (citing *Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517). A local ordinance aimed at remedying a problem need not entirely eliminate the problem. Instead, it may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Id.*

### 1. *Midway vs. O'Hare Arrest & Detention Policy*

City Defendants contend that we must dismiss plaintiffs' equal protection challenge to the City's disparate enforcement of the ordinance at Midway and O'Hare Airports because the plaintiffs have not alleged that the disparate enforcement is intentional, citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982). In *Shango*, the Seventh Circuit dismissed an equal protection claim holding that "isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause." 681 F.2d at 1104. The court noted that all the *Shango* plaintiff had shown was a "mere inconsistency in

prison management [which] may not in itself constitute a cognizable equal protection claim." *Id.* We think that a fair and liberal reading of plaintiffs' complaint shows they allege a practice of intentional disparate treatment. Those arrested at Midway are issued citations and sent on their way, while those arrested at O'Hare are detained for extensive periods of time. Plaintiffs are not alleging isolated instances of disparate treatment or mere inconsistent treatment, but rather an intentional pattern of such disparate treatment.

■ Such disparate treatment in and of itself does not constitute a violation of the equal protection clause. It is only if the policy of arresting and detaining has no rational basis that an equal protection claim is stated. *Cf. Ciechon v. City of Chicago,* 686 F.2d 511, 522 (7th Cir.1982) (finding violation of equal protection clause where two similarly situated city employees were disciplined differently in an irrational manner). It is not sufficient for plaintiff to claim a mere failure of those who administer the ordinance to treat all persons who have violated it equally. The equal protection clause prohibits selective enforcement which is deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. *D'Acquisto v. Washington,* 640 F.Supp. 594, 625 (N.D.Ill.1986) (citing *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)). "The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all." *Hameetman v. City of Chicago,* 776 F.2d 636, 641 (7th Cir.1985). "Selective, incomplete enforcement of the law is the norm in this country." *Id.*

■ City Defendants contend that there is a rational basis for any alleged disparate treatment: "In light of the vastly different conditions at O'Hare and Midway, even if plaintiffs' allegations are true and the City does make fewer arrests for violations of the Solicitation Ordinances at the relatively quiet Midway, this cannot sustain an equal protection claim." (Defendants' Reply

Memorandum at 11). While it definitely appears to be rational for the City to make fewer arrests at Midway, where far, far fewer travelers pass through, we do not think that the City responds to the plaintiffs' contention. "Plaintiffs are not attacking the arrest versus no arrest policy, but attack is upon when arrests occur, the policy and procedures at O'Hare Airport are to detain criminal defendants for a long period of time, while at Midway, only citations are issued." (Plaintiffs' Response at 11). Although, this statement should have been made in the complaint itself, we find that a liberal reading of plaintiffs' allegations that "[t]he arrests are being made ... for many hours without just cause ..." (Complaint ¶ 14) and that "[d]efendants' inconsistent policy of arrests ... at O'Hare Airport, while no treatment is imposed upon drivers in a like situation at Midway Airport, violates Plaintiffs' equal protection of the law." (Complaint ¶ 18) states essentially the same claim.

Rather than speculate as to the City's reasons for arresting and detaining drivers at O'Hare while not doing so at Midway, we will deny defendants' motion to dismiss at this time. This issue may more appropriately be disposed of on summary judgment with the aid of affidavits from appropriate officials identifying the City's rational basis for the disparate treatment. We emphasize that this is not a high burden and is only necessary to assist our finding that the treatment is not wholly arbitrary. Therefore, City Defendants' motion to dismiss the equal protection challenge to the Midway and O'Hare arrest and detention policy is denied.

2. *Exclusive Arrangement with Continental and Airways Rental*

■ City Defendants contend that we must dismiss plaintiffs' equal protection challenge to the City's exclusive arrangement with Continental and Airways Rental. Because we are dealing with a motion to dismiss and have only the pleadings before us, we are again hampered by a lack of factual data. The complaint as it reads does not allege the existence of a specific agreement between the City. Rather, the

complaint alleges that the ordinances permit special treatment for Continental and Airways Rental: "They [the ordinances] deny limousine drivers at O'Hare equal protection of law in that Continental Bus drivers are permitted to park in designated areas near the terminals and are allowed booths within O'Hare Airport in order to solicit travelers for transportation to the City of Chicago and the suburban area. They further allow Airways Rental, a known limousine service, to maintain a booth inside O'Hare terminals." (Complaint ¶ 19D). Because the ordinances do not mention Continental or Airways Rental, nor do the ordinances provide any exception to their prohibitions, we infer that plaintiffs intend to allege that the City allows this favorable treatment for Continental and Airways Rental.

Favorable treatment can arise in many ways. The City may enter into an agreement with specific companies and grant them exclusive privileges, or certain officials may improperly allow the favorable treatment to continue. We do not want to take judicial notice that there is an agreement between the City and these particular companies. As with the earlier equal protection claim, this claim would also be more appropriately resolved on summary judgment with the aid of evidence as to the existence of an exclusive arrangement and evidence as to its rational purpose. Therefore, we deny the City Defendants' motion to dismiss plaintiffs' equal protection challenge to City's disparate treatment of Continental and Airways Rental.

### 3. *Reverse Discrimination*

■ Plaintiffs allege that they are subjected to reverse discrimination "in that the issuance of public passenger licenses in the City of Chicago are being made primarily to minorities, in violation of equal protection law." (Complaint ¶ 19H). Regardless of whether or not plaintiffs have evidence in their possession which will support this claim, as they claimed in their response memorandum, we find that the plaintiffs lack standing to challenge such a practice. Nowhere in the complaint do the plaintiffs allege that they have applied for and were denied a license. On the contrary, all of the plaintiff drivers have licenses.

The Seventh Circuit has recently reiterated the minimum requirements that must be present before a party has standing to challenge unconstitutional activity:

(1) the party "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,"

(2) the injury "fairly can be traced to the challenged action," of the defendants and

(3) the injury "is likely to be redressed by a favorable decision."

*Northside Sanitary Landfill, Inc. v. Thomas*, 804 F.2d 371 (7th Cir.1986) (citations omitted). Because plaintiffs have failed to allege a personal injury because of the City's alleged reverse discrimination, we must dismiss their equal protection challenge based on reverse discrimination grounds under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

### B. *Due Process Clause Challenges*

We have identified three separate due process challenges in plaintiffs' complaint. First, plaintiffs allege a procedural due process claim in that the ordinances "unreasonably and arbitrarily deprive property and liberty in violation of due process of law." (Complaint ¶ 19A). Secondly, plaintiffs allege that the ordinances "violate due process in that Plaintiffs are being subjected to criminal arrest, detention and prosecution in violation of the respective ordinances which provides only for the imposition of monetary fines." (Complaint ¶ 19B). Finally, plaintiffs contend that the solicitation ordinance violates the due process clause under the void-for-vagueness doctrine.

### 1. *Procedural Due Process Claims*

Although we are again hampered by the plaintiffs' imprecise drafting of their complaint, the thrust of plaintiffs' procedural due process claim as to liberty and property interests appears to be centered around the ordinances' denial of the right of livery vehicles to solicit passengers on public ways (prohibited by § 28–19.2), the denial

of the right to solicit passengers by suburban public passenger vehicles (prohibited by §§ 28–3 and 28–28.1) and the de facto denial of plaintiffs' right to pick up prearranged fares by the enforcement of the ordinances by the police: "The result of this arbitrary enforcement is to effectively exclude livery and taxicab drivers from conducting legitimate and unsolicited business around O'Hare and further subject them to enforcement abuse. The police officers are attempting to deter conduct much broader than is necessary." (Complaint ¶ 15).

■■■■■ To the extent plaintiffs are claiming that they were deprived of a liberty or property interest by the terms of the ordinances as a procedural due process violation, their claim fails to state a claim upon which relief can be granted. It is well established that statutes or ordinances of general applicability may condition or even prohibit the right to conduct a business without running afoul of procedural due process. *Vaden v. Village of Maywood,* 809 F.2d 361, 364 (7th Cir.1987). As the Supreme Court stated in *Bi-Metallic Investment Co. v. State Board of Equalization:*

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the *person* or *property* of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915). Although plaintiffs may have other constitutional challenges available to them to challenge these ordinances themselves, procedural due process is not one of them. Therefore, to the extent that plaintiffs' claims under the Fourteenth Amendment rely on denial of procedural due process by the ordinance itself, they are dismissed.

Plaintiffs also allege they are being denied procedural due process by the de facto prohibition against conducting a legitimate unsolicited business around O'Hare. "Plaintiffs have stated in their Complaint that since the change in police command at O'Hare, the Plaintiffs have been subjected to such a high degree of harassment and arrest that Plaintiffs are now being arrested and booked for merely picking up a prearranged fare." (Plaintiffs' Response at 15).

The Fourteenth Amendment prohibits a state from depriving person of life, liberty or property without due process of law. In order to ascertain whether state action affecting an individual is violative of this prohibition, two inquiries are made: first, a life, liberty or property interest must be identified; and second, the degree of process due to the individual must be ascertained. *Shango v. Jurich,* 681 F.2d 1091, 1097 (7th Cir.1982). Plaintiffs contend that because the police are arresting and detaining them for engaging in legal conduct, i.e., picking up prearranged fares, they are being deprived of a liberty interest without due process of law. Further, the plaintiffs contend that they have "a property interest in the right to solicit passengers at O'Hare and to further accept prearranged passengers without being subjected to harassment or arrest." (Plaintiffs' Response at 16). As discussed above, plaintiffs have no procedural due process claim where the ordinances themselves deprive plaintiffs of the alleged right to solicit at the airports. Thus, the only possible property interest they could have would be the same as their alleged liberty interest—the right to pick up prearranged fares.

In order to determine the existence of a property interest, we must look to "existing rules or understandings that stem from an independent source such as state law." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). "Fur-

thermore, the person claiming the property interest must show more than a unilateral expectation of that interest, but a 'legitimate claim of entitlement' to it." *Nowak v. City of Calumet City*, 648 F.Supp. 1557, 1560 (N.D.Ill.1986) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). The legitimate expectations of the property interest holder may be created by state statute or local ordinance, *see, e.g., Ciechon v. City of Chicago*, 686 F.2d 511, 517 n. 3 (7th Cir.1982).

■ We think that plaintiffs have a property interest at stake when they are effectively prohibited from picking up prearranged fares. The ordinances clearly exempt picking up prearranged fares from the prohibited conduct, by stating that "this provision shall not apply where the person at said airports desiring other taxicab service has personally or through his agent previously by letter, telegram or telephone specifically engaged a suburban taxicab to transport him to any of the suburbs of the City of Chicago." § 28–28.1. Additionally, the ordinance provides that livery vehicles can pick up prearranged fares:

> It is unlawful for any person to solicit passengers for transportation in a livery vehicle on any public way. No such vehicle shall be parked on any public way for a time longer than is reasonably necessary to accept passengers in answer to a call for service and *no passengers shall be accepted for any trip in such vehicle without previous engagement for such trip, at a fixed charge or fare, through the station or office from which said vehicle is operated.*

§ 28–19.2 (emphasis added). We find that this language is sufficient to create a property interest in picking up prearranged fares from the O'Hare Airport.[5]

■ Having found that plaintiffs have a property interest under City law to pick up prearranged fares from O'Hare Airport, we now must decide whether plaintiffs have properly alleged that they are being deprived of that interest by more than neg-

ligent conduct by the police. "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams*, 474 U.S. 327, ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). The plaintiffs have not used the words "negligent" or "intentional" in drafting their complaint, but we find that by liberally construing the relevant allegations, plaintiffs have at least alleged more than negligent deprivations of their interest in picking up prearranged fares at O'Hare.

City Defendants next argue that even if plaintiffs have stated a claim for deprivation of a property interest, they have not stated a claim for deprivation without due process of law because plaintiffs have an adequate state post-deprivation remedy. The Supreme Court has indicated that we are to take into consideration any adequate state remedies available to plaintiffs before finding a procedural due process violation if the conduct by the defendants was not undertaken pursuant to established state procedure. *Parratt v. Taylor*, 451 U.S. 527, 544–43, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).

We note that plaintiffs apparently do not contend their deprivation of property was taken pursuant to established state procedure. *See, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). If it was, then *Parratt*, of course, would not apply. City Defendants contend that to the extent plaintiffs seek to recover for interference with their business relationships, i.e., the prearranged fares, plaintiffs have an adequate remedy under state law by the tort of interference with prospective economic advantage as set out in *Heying v. Simonaitis*, 126 Ill.App.3d 157, 81 Ill.Dec. 335, 466 N.E.2d 1137 (1984). *Heying* identifies the following elements that must be alleged to state a claim for the tort:

---

**5.** Because we find that plaintiffs' have a property interest in picking up prearranged fares, we do not address whether they may also have a liberty interest in not being arrested for conduct that is not prohibited under the ordinances. We think that the Fourth Amendment analysis below is better suited to addressing plaintiffs' wrongful arrest claims.

(1) the plaintiff's reasonable expectancy of entering into a valid business relationship;

(2) the defendant's knowledge of the expectancy;

(3) an intentional interference by the defendant which prevents the expectancy from ripening into a valid business relationship; and

(4) damage to the plaintiff from such interference.

126 Ill.App.3d at 161, 81 Ill.Dec. at 338–39, 466 N.E.2d at 1140–41.

We do not find that the facts in plaintiffs' complaint allege such a tort, nor do we think that this tort applies in this situation. Plaintiffs allege that the City has sanctioned such increased enforcement of the Public Passenger Vehicle Ordinances so as to include not only the prohibited conduct under the ordinances, but legitimate pick ups of prearranged fares. Plaintiffs did not allege that the City knew of each and every prearranged fare and then intentionally interfered with it as would be required to state a claim under *Heying* for tortious interference with prospective economic advantage. Therefore, we do not think that this tort would provide an adequate state remedy.[6]

Finding tortious interference does not provide the plaintiffs with an adequate state post-deprivation remedy, we reject City Defendants' contention that plaintiffs have no procedural due process claim under *Parratt*. Thus, we conclude that plaintiffs have stated a claim upon which relief can be granted as to their procedural due process claim.[7]

2. *Substantive Due Process Claims*

Plaintiffs' claims under substantive due process stem from their allegations that they "are being subjected to criminal arrest, detention and prosecution in violation of the respective ordinance which provides only for the imposition of monetary fines;" (Complaint ¶ 19B) and that "[the ordinances] are vague and overbroad because they vest unbridled discretion in the Chicago Police Department to enforce said sections of O'Hare International Airport." (Complaint ¶ 19). Plaintiffs contend that these allegations raise two Fourteenth Amendment claims. First, they argue that

---

**6.** Even if we were to find that plaintiff did have a cause of action under *Heying*, defendants have put us in the unenviable position of having to guess what defenses City Defendants would raise to such a claim. "By identifying these state torts in the context of *Parratt*, the City Defendants are not admitting that the plaintiffs can state a cause of action or establish liability under these theories. Nor are the City Defendants waiving their right to challenge such claims if plaintiffs were ever to assert them." (Defendants' Memorandum of Law at 25 n.*). With this reasoning, defendants appear to hope that we would dismiss plaintiffs' procedural due process claim, forcing plaintiffs to sue in state court for the tortious interference where City Defendants would then deny such a claim. However, if we were to dismiss plaintiffs' procedural due process claim, we see no reason not to grant plaintiffs leave to amend their complaint to include the tortious interference claim in this action as a pendent claim. Having found that plaintiffs have stated several federal claims, we do not lose subject matter jurisdiction by dismissing the procedural due process claim. Then if it turns out that plaintiffs are unable to state a cause of action for tortious interference or if City Defendants successfully assert a qualified immunity, we could then be able to correct our legal error (that is, finding that plaintiffs did have an adequate state remedy) by allowing

plaintiffs leave to reinstate their dismissed procedural due process claim.

**7.** Although we have liberally construed plaintiffs' claim as stating a procedural due process claim, we wish to note that if this situation of which they complain arises because they are forced to wait in their livery vehicles for long periods of time for their prearranged fares due to "airline changes or missed flights," or other "flight problems at O'Hare," (Complaint ¶ 11) and then the police find that they are parked on a public way "for a time longer than is reasonably necessary to accept passengers in answer to a call for service," then we are not so sure that plaintiffs have a claim for relief. Section 28–19.2 states that "[n]o [livery] vehicle shall be parked on a public way for a time longer than is reasonably necessary to accept passengers in answer to a call for service. . . ." If all that is happening is the drivers are forced to wait long periods of time for passengers that will show up late or never show up, we think, but do not so decide, that police action to enforce this provision of § 28–19.2 would not amount to deprivation of a property interest in picking up prearranged passengers. Any property interest plaintiffs may have in picking up prearranged passengers has been expressly conditioned upon the drivers not taking an unreasonably long time to pick up those passengers. § 28–19.2.

the mere fact that plaintiffs are put under arrest and taken into custody for violation of the ordinance violates plaintiffs' substantive due process rights. This is so, plaintiffs argue, because the ordinance does not provide for the arrest of violators. Secondly, plaintiffs assert the ordinances violate their due process rights under the void-for-vagueness doctrine.

### a. Arrest as a Violation of Due Process

■ Plaintiffs argue that they are being subjected to "criminal arrest, detention and prosecution in violation of the respective ordinance which provides for only the imposition of monetary fines when dealing with first, second and third time offenders." Violation of state law by itself does not rise to the level of a constitutional violation sufficient to state a claim under § 1983. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). We need not, however, look at those situations where it may rise to the level of a constitutional violation because plaintiffs were properly arrested under Illinois law.

■ Essentially, plaintiffs contend that because the ordinances do not provide jail time for all, or in some cases, any violations, that police cannot lawfully arrest them for violations. Plaintiffs appear to be referring to § 28–19.2 which states in pertinent part:

> Any person found guilty of violating this Section upon conviction thereof shall be punished by a fine of not less than Fifty Dollars ($50.00) nor more than Three Hundred Dollars ($300.00) for the first offense and not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00) for the second and each subsequent offense in any 180 day period, provided, however, that all actions seeking the imposition of fines only shall be filed as quasi-criminal actions subject to the provisions of the Illinois Civil Practices Act (Ill.Rev.Stat. 1973, ch. 110, par. 1 *et seq.*). Repeated offenses in excess of three within any 180–day period may also be punishable as a misdemeanor by incarceration in the county jail for a term not to exceed six

months under the procedure set forth in Section 1–2–1.1 of the Illinois Municipal Code (Ill.Rev.Stat.1973, ch. 38, pars. 100–1, *et seq.*) in a separate proceeding. A separate and distinct offense shall be regarded as committed each day upon which said person shall continue any such violation, or permit any such violation to exist after notification thereof.

This section, 28–19.2, prohibits "any person to solicit passengers for transportation in a livery vehicle on any public way. No such vehicle shall be parked on any public way for a time longer than is reasonably necessary to accept passengers in answer to a call for service...." However, this section applies only to livery vehicles and § 28.3 applies to suburban, non-city licensed public passenger vehicles and prohibits such vehicles to solicit passengers in the City after they drop off passengers they had brought into the City. The section which applies to suburban drivers provides that "[a]ny person in control or possession of said vehicle who violates any of the provisions of this section shall be subject to arrest and fine of not less than fifty dollars nor more than two hundred dollars for each offense." Thus, to the extent that plaintiffs' claims relate to the arrest of Donald Gardella and John A. Lindsey, the only suburban cab drivers in this suit, we think it clear that there is no violation of State law because the ordinance provides for the arrest of violators.

Arrests pursuant to § 28–19.2 present a different question. The issue as to these arrests is whether a police officer under Illinois law may legally arrest an individual charged with a quasi-criminal ordinance violation with only a fine as punishment. Defendants contend that Illinois case law recognizes the lawfulness of arrest on a charge of a quasi-criminal ordinance violation citing three cases where individuals were apparently arrested and taken into custody for violating quasi-criminal ordinances. *People v. Nogel*, 137 Ill.App.3d 392, 92 Ill.Dec. 1, 484 N.E.2d 516 (1985); *Village of Mundelein*, 112 Ill.App.3d 134, 67 Ill.Dec. 765, 445 N.E.2d 57 (1983); *City of Chicago v. Summit Fidelity and Sure-*

*ty Company,* 46 Ill.App.2d 460, 197 N.E.2d 475 (1964). Unfortunately, these cases do not really address the issue of lawful arrest. In each case there was an arrest on a quasi-criminal ordinance violation that was not specifically challenged as unlawful. More persuasive is a case defendants failed to cite, *People v. Edge,* 406 Ill. 490, 94 N.E.2d 359 (1950). In *Edge,* the defendant had been arrested for violating two quasi-criminal ordinances punishable only by a fine. The police in conducting a search incident to that arrest found that he was carrying illegal items. Defendant sought to suppress that evidence alleging that his arrest on the ordinances was unlawful in the first place. The Supreme Court of Illinois disagreed. "While an action for a violation of a municipal ordinance is both tried and reviewed as a civil proceeding, this does not preclude a violation of a municipal ordinance, subjecting the offender to the penalty of a fine from being a 'criminal offense,' within the contemplation of the statute on arrest." *Edge,* 406 Ill. at 497, 94 N.E.2d at 363 (citations omitted). Additionally, support for the authority of the police to arrest those found violating a municipal ordinance can be found in the Chicago Municipal Code and the Illinois Supreme Court Rules. Section 11–25 of the Chicago Municipal Code authorizes the police to arrest individuals found violating municipal ordinances:

> The members of the police department shall have power (1) to arrest or cause to be arrested, with or without process, all persons who break the peace, or are found violating any municipal ordinance or any criminal law of the State.

Chicago Municipal Code § 11–25 (1982). Further, Illinois Supreme Court Rule 528, which plaintiffs have cited to us on this issue, provides for bail for ordinance violation situations:

> (a) *Offenses Punishable by Fine Not to Excess $500.* Bail for offenses (other than traffic or conservation offenses), including ordinance violations, *punishable only by fine* which does not exceed $500 shall be $50 cash.

Ill.Rev.Stat., ch. 110A, ¶ 528 (1985). We think the inescapable conclusion to be drawn from the Supreme Court Rule is that it contemplates that the police will arrest, lawfully, individuals charged with violating ordinances that provide only a fine and that these individuals will then need to post bail.

Because we find that under Illinois law a police officer is authorized to arrest those found violating municipal ordinances that provide for only a fine and no incarceration time, we reject plaintiffs' claim for failure to state a claim upon which relief can be granted because the arrests were proper under state law. Therefore, City Defendants' motion to dismiss the claim is granted.

### b. *Void-for-Vagueness Challenge*

A statute can be facially attacked as a violation of the due process clause under the void-for-vagueness doctrine. " 'To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications.' " *Brockert v. Skornicka,* 711 F.2d 1376, 1381 (7th Cir. 1983) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982)). There are two distinct problems presented by a vague statute or ordinance. First, a vague law does not give an individual of ordinary intelligence a reasonable opportunity to comply with the law. In effect, there is no notice of what the law requires. *Brockert,* 711 F.2d at 1381. Second, a vague law lacks explicit standards for its application, and thus "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Id.* In analyzing a particular statute or ordinance for vagueness, the nature of the ordinance or statute will influence the degree of strictness with which we apply the vagueness doctrine:

> [T]he vagueness doctrine is most strictly applied when the law interferes with free expression or the exercise of other constitutionally protected rights. A degree of vagueness is more tolerable in civil enactments than it is in laws with criminal penalties; in the former, "the conse-

quences of imprecision are qualitatively less severe." Finally, economic regulation is subject to a less stringent vagueness analysis. Economic regulation usually deals with a narrower subject and those affected by it are more likely to consult the law, seeking clarification if necessary, in order to plan their behavior.

*Brockert,* 711 F.2d at 1381 (citations omitted). City Defendants contend that the solicitation ordinances are economic regulations and therefore should be given the least strict standard of review. Because we cannot decide this vagueness challenge at this juncture, we do not decide which standard is appropriate.[8]

Plaintiffs allege that the solicitation ordinances are vague because the ordinances "vest police officers with unbridled discretion to determine what is or what is not 'solicitation' or 'interurban operations' ..." (Complaint ¶ 15).[9] Because "interurban operations" clearly refers to operations "between, among, in the midst" of cities,[10] and because the term is used only as a heading we reject any vagueness challenge to the term "interurban operations." Therefore, at issue is only whether the words "solic-ited" in § 28–3 and "solicit" in § 28–19.2 are impermissibly vague.

In determining whether a facially imprecise ordinance or statute is nevertheless sufficiently particular to avoid unconstitutional vagueness, a court must look to three factors: (1) the meaning of the words used in the enactment itself; (2) the interpretation of the enactment given by the appropriate state courts; and (3) the interpretation of the enactment given by those who must enforce it. *Bosco's Club, Inc. v. City of Oklahoma City,* 598 F.Supp. 583 (W.D.Okla.1984) (citing *Grayned v. City of Rockford,* 408 U.S. 104, 111, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972)). Unfortunately, at this early point on the litigation, we do not have the benefit of the third factor, the interpretation of the enactment given by those who must enforce it. For example, City Defendants may have incorporated a judicial interpretation of a statute which provides "[i]t shall be unlawful for any person or corporation [t]o solicit" as applying only when behavior "is addressed to a particular individual to do some particular thing." *People v. Beaulieu Realtors, Inc.,* 144 Ill.App.3d 580, 585, 98 Ill.Dec. 382, 386, 494 N.E.2d 504, 508 (1986). In

---

**8.** We do note, however, that our finding that plaintiffs have a limited property interest in soliciting prearranged passengers at O'Hare does not mean that plaintiffs have a constitutional right to solicit prearranged passengers. They have only a property interest which the State or City may not take away without due process of law, this is not the same as a constitutional right to solicit. A constitutional right which is capable of being exercised at the airport would be something such as freedom of speech, association, etc. Also, plaintiffs' citation to *Patton v. Administrator of Civil Aeronautics,* 217 F.2d 395 (9th Cir.1954), is irrelevant to this vagueness challenge as that case dealt with only the commerce clause.

**9.** In their memorandum of law, but not in their complaint, plaintiffs include the term "public way" as being a vague term requiring our finding that the ordinance is unconstitutionally vague. Plaintiffs contend: " 'Public Way' can be construed to cover persons in alleys, public parking lots, and streets and possibly the runway at O'Hare Field." We agree. We do not, however, think this makes the term "public way" vague. Rather, we think an individual of ordinary intelligence would understand that a prohibition on solicitation on a "public way"

includes all public places where the public may go. The reference to the runways is absurd and a "finding of unconstitutional vagueness cannot be based on uncertainty at the margins, or on a parade of bizarre hypothetical cases: problems of that order can be resolved in challenges to the ordinance as applied." *Levas and Levas v. Village of Antioch,* 684 F.2d 446, 451 (7th Cir. 1982). Thus, if plaintiffs were to amend their complaint to include "public way," we would not find it states a claim for a vagueness challenge. Plaintiffs also make some general conclusory comments as to how "one clearly can see the looseness of the not-so-specific language in the balance of said ordinance." (Plaintiffs' Response at 22). Well, we cannot so clearly see such problems. Plaintiffs have a burden to identify which language they find vague. To the extent plaintiffs are interested in amending their complaint to allege the existence of such "vague" terms, we encourage plaintiffs and their counsel to respect the requirements of Fed.R. Civ.P. 11 and research their legal and factual position prior to amending their complaint.

**10.** *"Inter:* between, among, in the midst," "Urban: of, relating to, characteristic of, or taking place in a city." *Webster's Third New International Dictionary,* 1776, 2520 (1976).

the *Beaulieu* case, the court rejected the defendant's claim that he was only engaged in advertising when he mailed letters to certain individuals. The court found that "advertising entails giving general notice in order to attract public attention." *Beaulieu*, 144 Ill.App. at 585, 98 Ill.Dec. at 386, 494 N.E.2d at 508. Thus, in the example plaintiffs in this case cite in their complaint, wearing T-shirts or jackets, so long as they were not addressed to a particular individual, it would seem that they would not be soliciting, but advertising and thus not within the purview of the solicitation ordinance. Because we do not have the benefit of the third factor at this stage, we will deny City Defendants' motion to dismiss. This does not mean, however, that we find the challenged term vague; rather, we will make that decision at the summary judgment stage.

### C. *Fourth Amendment Excessive Post-Arrest Detention Claim*

■ Plaintiffs allege in their complaint that the "arrests are being made in excess of powers granted by statute by providing incarceration for many hours without just cause, and are being based on the named ordinances in question." (Complaint ¶ 14). Although not so labeled in their complaint, plaintiffs identify this allegation as stating a claim for a Fourth Amendment violation for excessive post-arrest detention. "At issue in this part of Plaintiffs' cause is whether the City's post-arrest detention policy—which for Plaintiffs resulted in 12 hours exceeds the brief period of post-arrest detention permitted by the Fourth Amendment." (Plaintiffs' Response at 17). City Defendants apparently missed this argument in plaintiffs' response, as City Defendants do not address this Fourth Amendment excessive post-arrest detention claim.

The Supreme Court has indicated that "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take administrative steps incident to arrest."

*Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975). "When the 'administrative steps' have been completed, the police must take the suspect before a magistrate to establish probable cause, or they must let him go." *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437 (7th Cir.1986), *petition for cert. filed*, 55 U.S.L.W. 3537 (U.S. Feb. 10, 1987) (No. 86–884). The Seventh Circuit has not identified exactly how long this "brief period" may be, however, in *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir.1985), it found that a four-hour detention in the dead of night required a reversal of summary judgment granted in favor of defendant police for remand for evidence to justify such a detention. *Moore*, 754 F.2d at 1351–52. Again, in *Gramenos*, the Seventh Circuit found that a four-hour detention required an explanation from the police and remanded the case for more evidence:

> It is premature to say how long is too long under the fourth amendment. On remand the police should explain what must be done after arrest for shoplifting and why reasonably diligent officers need more than four hours to do it. The court should also determine whether four hours is an acceptable period for a nonviolent misdemeanor. If the police choose to perform time-consuming tasks after an arrest, perhaps they must do so on their own time rather than the suspect's, issuing a citation rather than keeping the suspect locked up in the interim.

*Gramenos*, 797 F.2d at 437. *See also McGaughey v. City of Chicago*, 664 F.Supp. 1131 (N.D.Ill. 1987). In determining what is a justifiable "brief period," we are to decide whether the detention is justified as incident to a legitimate governmental purpose or is imposed for the purpose of punishment. *Cf. Moore*, 754 F.2d at 1350.

Plaintiffs have not alleged in their complaint the specific time period involved in this case, they have only alleged that they

were being held for "many hours."[11] In their brief they indicate that they have been held for twelve hours. City Defendants should present evidence to explain what must be done after these drivers are arrested and why reasonably diligent officers need twelve hours or more to do it.[12] Because we find that plaintiffs have alleged sufficient facts to state a claim upon which relief can be granted for a Fourth Amendment excessive post-arrest detention claim, we deny City Defendants' motion to dismiss this claim.

### D. *First Amendment Claims*

Plaintiffs have made the following allegations as to their First Amendment claims:

> Plaintiffs also seek to have the applicable Licensing Ordinances of Chapter 28 (28–2, 28–5, 28–6, 28–9, 28–19, 28–28.1) declared unconstitutional as they are being applied to Plaintiffs in that they vest officials with unbridled discretion in issuing public passenger vehicle licenses, such discretion permits officials to effectively discriminate in the issuance of licenses and unbridled discretion of determining who falls under said statutes. (Complaint ¶ 2).

> The airport is policed by officers of the Chicago Police Department who arrest violators of airport and/or city regulations including, but not limited to, solicitation on a public way (28–19.2). Many of such arrests for violations of above references ordinances have occurred on other than public ways, as prescribed by said ordinances. (Complaint ¶ 13).

> The named ordinances vest police officers with unbridled discretion to determine what is or what is not "solicitation" or "interurban operations" and are vague and overbroad in that they set no

objective standards to follow in the enforcement of such regulations. The result of this arbitrary enforcement is to effectively exclude livery and taxicab drivers from conducting legitimate and unsolicited business around O'Hare and further subject them to enforcement abuse. The police officers are attempting to deter conduct much broader than is necessary.

> The officers are also given broad discretion to stop conduct not related to solicitation, namely the right to have uniforms or name jackets, T-shirts or other forms of overt advertising, which is not worn for the purpose of solicitation and is a violation of free speech. (Complaint ¶ 15).

#### 1. *Overbreadth Challenge*

■■■ Defendants contend that we must dismiss this overbreadth challenge because the overbreadth doctrine does not apply to commercial speech, *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 497–98, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1982). Plaintiffs respond that defendants are "misinterpreting or misleading this Court as to facts at hand. Plaintiffs are not principally focusing this Court on a denial of commercial speech." That may be so, but this Court fails to see what constitutionally protected conduct they are trying to focus this Court on. In paragraph 2, plaintiffs mention "unbridled discretion" to issue public passenger vehicle licenses. Were this a license to make a public speech, hold a protest, solicit for an organization to support its free speech rights, then "unbridled discretion" may be relevant, but we fail to understand what connection there is between a public pas-

---

**11.** We do not think that plaintiffs needed to identify the actual time period in their complaint, but it would have been helpful.

**12.** To the extent that plaintiffs contend in their brief that they are being arrested and fingerprinted, we invite the parties to explore the possibility that plaintiffs may belong to the class certified in *Doulin v. City of Chicago,* 662 F.Supp. 318, currently before Judge Rovner. The class in that case consists of:

> All persons who were arrested on other than a felony charge by a police officer of the City of Chicago on or after November 3, 1977, who had no reasonable probability of having charges against them elevated to a felony charge, and who were detained pursuant to the "fingerprint clearing" policy of the City of Chicago implemented in Police Department General Order 78–1.

*Doulin v. City of Chicago,* 662 F.Supp. 318, 328 (N.D.Ill.1986).

senger vehicle license and protected First Amendment activities. Plaintiffs do not help us at all in this matter. All that plaintiffs identify as being inhibited by this "unbridled discretion" is their effort to conduct their business: "The result of this arbitrary enforcement is to effectively exclude livery and taxicab drivers from conducting legitimate and unsolicited business around O'Hare." We do not think that the taxicab business is protected by the First Amendment.

Even if the ordinance reached other constitutionally-protected conduct, other than those protected by the First Amendment, the overbreadth doctrine would not apply. The overbreadth doctrine applies only to the First Amendment and works to relax the standing requirements by permitting parties to raise the rights of third parties not before the Court. *Schultz v. Frisby*, 807 F.2d 1339, 1349 (7th Cir.1986). "An ordinance may ... be constitutionally invalid on its face if it is written so broadly that it may inhibit—have a 'chilling effect' on— the protected speech of third parties." *Id.* Additionally, an ordinance may be unconstitutional because " 'any enforcement carries with it the risk that the enforcement is being used merely to suppress speech' ..." *Schultz* at 1348. Without an allegation as to what constitutionally-protected activity is being infringed by or could be infringed by this ordinance, we have no choice but to grant defendants' motion to dismiss plaintiffs' overbreadth challenge.

### 2. *Alleged Infringement Upon Commercial Speech*

■ Plaintiffs allege in their complaint "officers are also given broad discretion to stop conduct not related to solicitation, namely the right to have uniforms or name jackets, T-shirts or other forms of overt advertising, which is not worn for the purpose of solicitation and is a violation of free speech." "[The ordinances] violate free speech by the imposition of restraint on the use of badges, uniforms, jackets or other

forms of advertising not used for the purpose of solicitation." (Complaint ¶¶ 13, 19J). At no point in their complaint do plaintiffs allege that any of them have been arrested under the solicitation ordinances for wearing such clothing. As noted earlier, the overbreadth doctrine which would give plaintiffs standing to challenge constitutional violations of third parties has no place in the commercial speech context. Thus, absent an allegation that plaintiffs have *already* been arrested for such conduct, they have no standing to challenge this alleged infringement on commercial speech.[13] Therefore, finding plaintiffs have failed to allege a violation of their own rights, we must grant City Defendants' motion to dismiss so far as it relates to plaintiffs' alleged right to advertise.

### E. *Antitrust Claims*

In their complaint, plaintiffs make two allegations as to potential antitrust violations. First, plaintiffs contend that the ordinances "create a monopoly in violation of antitrust laws and the Sherman Act in that they are effectively prohibiting suburban limousine drivers from conducting business at O'Hare and thereby eliminating competition amongst public passenger vehicles." Secondly, that an exclusive arrangement which allows Continental Bus and Airways Rental drivers the exclusive right to solicit passengers at O'Hare is an illegal arrangement.

### 1. *Limitations on Suburban Limousines*

■ Plaintiffs and defendants devote all of their arguments to the second alleged antitrust violation and never address the banning of the suburban limousine drivers from conducting business at O'Hare. The ordinance itself does not use the term "limousine," rather, it uses the terms public passenger vehicle, livery vehicle and taxicab. From the context of plaintiffs' allegations, they appear to be referring to the

---

**13.** We note, however, without deciding, that in light of the recent Illinois case, *People v. Beaulieu*, 144 Ill.App.3d 580, 585, 98 Ill.Dec. 382, 386, 494 N.E.2d 504, 508 (1986), which indicated that under another no solicitation ordinance advertising is not the same as solicitation, such police action would appear to be improper. Thus, it would not be the ordinance itself which is unconstitutional, but its improper application.

prohibition against all public passenger vehicles not licensed by the City from operating and soliciting within the City, §§ 28–2 and 28–1.1. Section 28–2 provides:

It is unlawful for any person other than a metropolitan transit authority or public utility to operate a motor vehicle, or for the registered owner thereof to permit it to be operated, for the transportation of passengers for hire within the city, except on a funeral trip, *unless it is licensed by the city as a public passenger vehicle.*

Section 28–1.1 provides:

.... It shall be unlawful and the City will not permit any public passenger vehicle not licensed hereunder as a taxicab to solicit taxicab business within the City of Chicago, excepting only passengers destined to the community in which such public passenger vehicle is licensed and then only when such transportation is arranged for by telephonic or written order.

The very next section permits unlicensed public passenger vehicles to come into the City to drop off passengers accepted for transportation outside of the City. Section 28–3. Thus, it is an overstatement to claim that the ordinances ban suburban limousine drivers from conducting business at O'Hare. They can drop off passengers and pick up passengers destined for their own suburb if prearranged.

Before the Sherman Act applies, the plaintiffs must show that interstate commerce is being restrained or monopolized. 15 U.S.C. §§ 1–2 (1982). Plaintiffs have made one conclusory allegation that "[I]t is estimated that over 100,000,000 passengers, visitors and employees use the facility yearly." (Complaint ¶ 12). In 1963 the Seventh Circuit considered whether the application of Chicago's taxicab ordinance to prohibit suburban taxicabs from operating at O'Hare constituted a restraint on interstate commerce in violation of the Sherman Act. *Evanston Cab Co. v. City of Chicago*, 325 F.2d 907 (1963), *cert. denied*, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964). Relying principally on *United States v. Yellow Cab*, 332 U.S. 218, 67 S.Ct.

1560, 91 L.Ed. 2010 (1947), the Seventh Circuit found that interstate commerce was not restrained by Chicago's Public Passenger Vehicle Code:

The passenger who enters a cab at O'Hare field or who leaves a cab at O'Hare field is furnished a service. Neither the owner of the cab nor the driver thereof crosses any state line. Nothing about the service affects interstate commerce. The service is incidental to a local operation and we would not be justified in resorting to impractical theorizing in order to conclude that a local ride in a taxicab affects interstate commerce.

*Evanston Cab*, 325 F.2d 912. We have not found any subsequent Seventh Circuit or Supreme Court case that would suggest that *Evanston Cab* is not still good law. Rather, a recent Eleventh Circuit case cited *Evanston Cab* approvingly for the same proposition. "Generally, taxicab service between airports and businesses and homes is not within the stream of interstate commerce." *Executive Town & Country Services v. City of Atlanta*, 789 F.2d 1523 (11th Cir.1986) (citing *Yellow Cab* and *Evanston Cab*). The Eleventh Circuit in *Executive Town* did find that the situation before it involved interstate commerce because the majority of the plaintiff limousine service's customers were prearranged fares. As noted earlier, the City of Chicago's ordinances do not prohibit unlicensed limousines from coming into the City to pick up prearranged fares, therefore, the plaintiffs in this case have not stated a claim for relief under the antitrust laws where there is no allegation that interstate commerce is being restrained. Therefore, defendants' motion to dismiss is granted so far as it related to this portion of plaintiffs' antitrust claim.

2. *Agreement Between Chicago and Continental and Airways Rental*

█ Plaintiffs' second antitrust violation involves an alleged agreement between Chicago and Continental Transport Bus Company and Airways Rental, a limousine service. Plaintiffs allege this arrangement violates the federal antitrust laws. We must dismiss this portion of plaintiffs' anti-

trust claim. As with their first antitrust claim, plaintiffs have not sufficiently alleged the existence of a restraint on interstate commerce.

Plaintiffs principally attack the arrangement the City has with Continental and Airways Rental because it allows only two companies to solicit travelers as they arrive at O'Hare and it does not allow plaintiffs to solicit the same passengers. As we discussed above, the transportation to or from the airport of nonprearranged passengers does not implicate interstate commerce. If there were allegations that plaintiffs have been prevented from picking up prearranged fares because of the exclusive arrangement, then interstate commerce may be involved.[14] *See Executive Town & Country Services v. City of Atlanta,* 789 F.2d 1523, 1526 (11th Cir.1986); *Charter Limousine v. Dade County Board of County Commissioners,* 678 F.2d 586, 588 (5th Cir.1982); *Southerland v. St. Croix Taxicab Association,* 315 F.2d 364, 368 (3d Cir.1963); *Patton v. Administrator of Civil Aeronautics,* 217 F.2d 395, 396 (9th Cir. 1954); *Airport Taxi Cab Advisory Committee,* 584 F.Supp. 961, 965 (N.D.Ga.1984). There is also a lack of allegations to indicate that interstate commerce is burdened by the alleged arrangement in any other manner.

Defendants never addressed the lack of a restraint on interstate commerce, rather, defendants state that we must dismiss plaintiffs' antitrust claims because they contend that the City is shielded from antitrust challenge by the state action exemption to the federal antitrust laws. We will address the state action immunity at this point, despite our holding that plaintiffs have failed to allege a restraint on interstate commerce, for two reasons. First, because plaintiffs may well seek to amend their complaint to allege a restraint on interstate commerce. Secondly, because the majority of recent cases dealing with limousine and taxi antitrust issues have avoided the interstate commerce issue and have gone directly to the state action issue. We do not know whether this indicates that there is a sufficient restraint on interstate commerce in those cases or whether the state action issue should precede all other inquiries.

In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court, relying on principles of federalism and state sovereignty, refused to construe the Sherman Act as applying to the anticompetitive conduct of a State acting through its legislature. 317 U.S. at 350–51, 63 S.Ct. at 313–14. Instead, the Court found that the Sherman Act was intended to prohibit private, not public, restraints on trade, and it refused to "infer an intent to 'nullify a state's control over its officers and agents' in activities directed by the legislature." *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 38, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985). Later in a series of decisions, the Supreme Court considered the state action doctrine as it applies to conduct of local governmental units. *See Town of Hallie,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24; *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1982); *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). "The Court held that local governmental conduct is not necessarily exempt from federal antitrust laws since local governments, unlike states, are not sovereigns; rather, local governmental conduct is exempt when taken pursuant to a clearly articulated state policy to displace competition with regulation of monopoly public service." *LaSalle National Bank of Chicago v. DuPage County,* 777 F.2d 377, 380–81 (7th Cir. 1985). In *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d

---

**14.** Plaintiffs have alleged that police enforcement of the solicitation ordinances has interfered with their ability to pick up their prearranged fares. This, however, does not mean that the exclusive arrangement between the City and Continental and Airways Rental is at all responsible for the plaintiffs' alleged inability to pick up their prearranged fares. To the extent that police conduct interferes with plaintiffs' picking up prearranged fares, this may state a claim under the interstate commerce clause as discussed below.

233 (1980), the Supreme Court applied a two-pronged test to a case in which the state action exemption was claimed by a private party.[15] Under the first prong, the challenged activity must be one clearly articulated and affirmatively expressed as state policy. *Southern Motor Carriers Rate Conference v. United States,* 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985). Under the second prong, the State must actively supervise any private anticompetitive conduct. *Id.* at 57, 105 S.Ct. at 1727. "This supervision requirement prevents the state from frustrating the national policy in favor of competition by casting a 'gauzy cloak of state involvement' over what is essentially private anticompetitive conduct." *Id.*

Although the cases have not clearly defined the parameters of this "clear articulation" prong, they have provided some guidance. *LaSalle,* 777 F.2d at 381. It is not sufficient that a state merely have granted local governments general authority to govern local affairs. *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). On the other hand, the state need not specifically authorize conduct with anticompetitive effects. *Town of Hallie,* 471 U.S. at 42–43, 105 S.Ct. at 1718. It is sufficient that anticompetitive effects are a foreseeable consequence of engaging in the authorized activity. *Id.* at 43, 105 S.Ct. at 1718–19. "In considering the [allegedly anticompetitive conduct] we will first determine whether any state legislative act(s) authorizes the challenged conduct and then determine whether anticompetitive effects are a foreseeable result of the authorization. An affirmative determination to both questions will lead us to conclude that the state intended the localities' challenged conduct to be exempt from federal antitrust laws." *LaSalle National Bank,* 777 F.2d at 381. City Defendants contend that the first part of the "clear articulation" prong is met by Ill.Rev.Stat. ch. 24, § 11–102–5 which provides:

Every municipality ... has the following additional powers:

\*　　\*　　\*　　\*　　\*　　\*

(3) to let any person, or grant concessions or privileges in, any land adjoining the landing field or any building or structure on such land for the shelter, servicing, manufacturing and repair of aircraft, aircraft parts and accessories, for receiving and discharging passengers and cargo, and for the accommodation of the public at such airport;

We are assisted in our examination of whether this statute authorizes the alleged anticompetitive conduct by an Illinois Supreme Court case which interprets this statute in light of the City of Chicago and Continental Transport's agreement. Keeping in mind that "[w]e may not 'construe a state statute contrary to the construction given it by the highest court of a state," *324 Liquor Corp. v. Duffy,* —— U.S. ——, ——, 107 S.Ct. 720, 725, 93 L.Ed.2d 667 (1987) (citing *O'Brien v. Skinner,* 414 U.S. 524, 531, 94 S.Ct. 740, 744 (1974)), we look to *Local 777 Duoc, Seafarers International Union v. Illinois Commerce Commission,* 45 Ill.2d 527, 260 N.E.2d 225 (1970), where the Illinois Supreme Court had to decide whether a contract between the City and Continental was entered into pursuant to Ill.Rev.Stat. ch. 24, § 11–102–5(3) or pursuant to Ill.Rev.Stat. ch. 24, § 11–122.1–1. The court found that the contract was entered into pursuant to § 11–102–5(3). *Local 777* did not specifically address the issue of whether § 11–102–5(3) contemplated that the City would grant an exclusive right to one company to operate transportation services on the airport grounds, but it was instead concerned with the jurisdiction of the Illinois Commerce Commission over the parties' agreement. We think, however, that the decision lends support to our conclusion that § 11–102–5(3) authorizes the City to grant exclusive contracts for transportation at the airports, and that the City may choose to grant

---

**15.** In *Town of Hallie,* the Supreme Court indicated that when the challenged conduct involves the state regulation of private anticompetitive conduct, as we have in this case, then the appro-priate analysis is that which is applied to private parties despite the "mere fact that the state agency was named defendant ..." 471 U.S. at 39, 105 S.Ct. 1717 n. 3.

those privileges to a small number of parties was completely foreseeable. Thus, City Defendants have successfully demonstrated that the first prong of the state action immunity test is met. There remains, however, the second prong, whether this private anticompetitive conduct by Continental and Airways Rental is actively supervised by either the City or the State.

City Defendants apparently do not think the state/city supervision prong applies in this case because the nominal defendant is the City. Although it is correct that under *Town of Hallie*, a municipal actor is not subject to the state supervision prong, we do not have state actors. In this case, the actors are the two private companies that are allowed to solicit airport passengers exclusively out of the airports, Continental and Airways Rental. What we have is essentially a municipal regulation which restrains competition among private parties. The alleged agreement between the City, Continental and Airways Rental restrains competition in the airport transportation services market. Because we are concerned here with private parties engaging in anticompetitive conduct, that is, maintaining a monopoly of transportation services at the City airports, the two-prong test applies. *Southern Motor*, 471 U.S. at 61, 105 S.Ct. at 1728. *See also 324 Liquor Corp. v. Duffy*, —— U.S. ——, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987) (applying the two-part test to New York's liquor pricing system).

In *Duffy*, the Supreme Court struck down New York's retail liquor pricing system because the state failed to supervise the implementation of the program:

> New York's liquor pricing system is not actively supervised by the State. As in *Midcal*, the State "simply authorized price setting and enforces the prices established by private parties." New York "neither establishes prices nor reviews the reasonableness of the price schedules." New York "does not monitor market conditions or engage in any 'pointed reexamination' of the program." Each wholesaler sets its own "posted" prices; the State does not control month-to-month variations in posted prices.

*Duffy*, —— U.S. at ——, 107 S.Ct. at 725–26 (citations omitted). Although City Defendants never addressed the active supervision prong, they did cite this court to Magistrate Lefkow's recommendation to Judge Nordberg in *Falk v. City of Chicago*, slip op. No. 84 C 2995 (Mag. Recommendation, N.D.Ill. May 6, 1986), in which the Magistrate found that:

> The contract between the City and Continental, which gives Continental the exclusive right to provide ground transportation services at O'Hare and Midway, constitutes state action by the City and the private defendants. It is therefore exempt from the federal antitrust laws.

*Falk* at 14. The Magistrate based her decision upon a review of the Illinois Interstate Commerce Commission's regulations of Continental's rates and based her decision on the fact that the *Falk* plaintiff's injury concerned price and therefore the Magistrate found that the ICC's regulation was sufficient supervision of the price. First, we do not have any indication in the pleadings, as did the Magistrate in *Falk*, that there is any particular agreement between the City and Continental and Airways Rental. Nor do we have the ICC regulations before us at this point. At this early stage in the litigation, we are at an extreme disadvantage in deciding whether or not the City or the State actively supervises the alleged exclusive transportation services contracts. Therefore, we do not decide at this time whether plaintiffs' challenge to the exclusive arrangement is barred by the State action immunity doctrine.

### F. *Contract Clause Claim*

██ Plaintiffs allege that the ordinances "interfere with legitimate business interests and their enforcement restricts and impedes contractual obligations between limousine drivers and their prearranged customers, in violation of the contract clause." In their response, plaintiffs indicate that it is the application of the ordinances to plaintiffs that causes the alleged contractual impairment. We do not think, however, that the contract clause was intended to reach contractual impair-

ments as a result of statutory enforcement. This constitutional ban on the states from enacting legislation which impairs contracts is not applicable to mere individual conduct by a person's action under the color of state law. *Stone Mountain Game Ranch, Inc. v. Hunt*, 570 F.Supp. 238 (D.C. Ga.1983), *affirmed*, 746 F.2d 761 (11th Cir. 1984); *Poirer v. Hodges*, 445 F.Supp. 838 (D.Fla.1978). Therefore, we grant City Defendants' motion to dismiss plaintiffs' contract clause claim.

### G. *Commerce Clause Claims*

Plaintiffs make the following allegations as relate to their interstate commerce clause claims:

The O'Hare International Airport is located within and owned by the City of Chicago. It is estimated that over 100,-000,000 passengers, visitors and employees use the facility yearly. (Complaint ¶ 12).

To avoid unfounded claims of solicitation, livery and suburban taxicab drivers are forced to conduct their business on a prearranged reservation basis, which typically is subject to airline changes or missed flights. (Complaint ¶ 11).

Based upon the large number of incoming flights and flight problems at O'Hare, limousines operate best on a "first come, first serve basis." (Complaint ¶ 6).

The named ordinances vest police officers with unbridled discretion to determine what is or what is not "solicitation" or "interurban operations" and are vague and overbroad in that they set no objective standards to follow in the enforcement of such regulations. The result of this arbitrary enforcement is to effectively exclude livery and taxicab drivers from conducting legitimate and

unsolicited business around O'Hare and further subject them to enforcement abuse. The police officers are attempting to deter conduct much broader than is necessary. (Complaint ¶ 15).

They [the ordinances] place an unreasonable burden on interstate commerce in that they limit and prohibit a primary method of transportation to interstate travelers between O'Hare and their destinations. (Complaint ¶ 19G).

The initial question we must decide is whether plaintiffs' taxicab and limousine services respectively are a part of interstate commerce. The commerce clause [16] to the United States Constitution restricts states and municipalities from imposing unreasonable burdens on interstate commerce.[17] *Executive Town & Country Services v. City of Atlanta*, 789 F.2d 1523, 1525 (11th Cir.1986) (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470–73, 101 S.Ct. 715, 727–28, 66 L.Ed.2d 659 (1981); *Philadelphia v. New Jersey*, 437 U.S. 617, 621–24, 98 S.Ct. 2531, 2534–36, 57 L.Ed.2d 475 (1978)). If plaintiffs' services are not a part of interstate commerce, then the commerce clause has no application.

As discussed earlier under the antitrust discussion, case law has consistently found that the pick up and delivery of nonprearranged fares at the airport is not interstate commerce. *Evanston Cab Co. v. City of Chicago*, 325 F.2d 907 (7th Cir. 1963). Therefore, to the extent that plaintiffs seek to invalidate the ordinances because the ordinances prohibit their solicitation of passengers at O'Hare Airport or Midway Airport, we reject that claim. The ordinances do not prohibit plaintiffs from delivering to the airport passengers they picked up in the suburbs. The ordinances,

---

**16.** "The Congress shall have power ... to regulate Commerce ... among the several states...." U.S. Const. Art. I, § 8, cl. 3.

**17.** As a side matter, we note that the commerce clause, while limiting the power of states to interfere in areas of national concern, does not secure rights cognizable under § 1983. *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1476 (10th Cir.1985). Therefore, if plaintiffs are

successful in showing a commerce clause violation, they would have no remedy for damages under § 1983. However, they would still be able to get injunctive relief; therefore, we do not dismiss their claim on this basis. *People v. General Electric Co.*, 683 F.2d 206, 211 (7th Cir.1982) (the commerce and supremacy clauses create rights enforceable in equity proceedings in federal court).

themselves, do not prohibit plaintiffs from picking up prearranged fares either.

Plaintiffs appear to concede the fact that nonprearranged fares do not come within the purview of interstate commerce because in their response they emphasize that the enforcement of the ordinances "deprives prearranged fares from continuing their interstate travel." "The plaintiffs in our case at hand have alleged that the Defendants, in their attempts to enforce the ordinances regulating the solicitation of travelers arriving at O'Hare, have placed an unreasonable burden on interstate commerce. Plaintiffs contend that their customers consist of people who are prearranged and scheduled in advance." (Plaintiffs' Response at 29). Defendants do not deny that regulations affecting prearranged fares would interfere with interstate commerce, rather, defendants contend that plaintiffs' position "is a tenuous and unprecedented attempt to drastically increase the scope of the commerce clause." We disagree. Plaintiffs have alleged a pattern or practice of the City of Chicago police department to enforce the solicitation ordinances in such a manner as to deny plaintiffs the ability to pick up their legitimate prearranged passengers. We think that municipal conduct can rise to the level of an impermissible infringement on interstate commerce. *Cf. New York Airlines v. Dukes County*, 623 F.Supp. 1435, 1443 (D.Mass.1985) (allegation that airport commission's refusal to grant plaintiff airlines access to the airport as in impermissible regulation of routes and services of an interstate air carrier stated a cause of action under the commerce clause).

We think the complaint states a claim under the commerce clause and we there-fore deny City Defendants' motion to dismiss the commerce clause challenge to the *conduct* of the City in enforcing the solicitation ordinances.[18]

## H. *Punitive Damages*

To the extent that plaintiffs seek punitive damages against the City of Chicago under § 1983, we must dismiss that claim. *City of Newport v. Fact Concepts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).

## I. *Pendent Claims*

To the extent plaintiffs contend that their "false imprisonment" claim is brought under § 1983 for violation of their rights under the Fourth Amendment, it states a claim upon which relief can be granted as noted above. Because plaintiffs have abandoned their false imprisonment claim under state law, we do not address the issue of whether it states a claim upon which relief can be granted.

## J. *Motion for a More Definite Statement Under Fed.R.Civ.P. 12(e)*

City Defendants have requested that we order plaintiffs to file a more definite statement. We reject this notion because we agree that plaintiffs have put defendants on notice of their claims as required under Fed.R.Civ.P. 8(a) by a short and plain statement of their claim. Defendants' request can be adequately addressed through discovery.[19]

## V. *Conclusion*

In summary, and in order of our discussion above, we have taken the following actions. (1) We find we are not barred from this inquiry under the *Younger* abstention doctrine. (2) Defendants' affirmative defense of res judicata is more properly considered on a motion for summary judgment. (3) Defendants' affirmative de-

---

**18.** As with our discussion under the procedural due process section of this opinion, footnote 7, we note that to the extent plaintiffs' complaints arise because they are forced to wait in their livery vehicles for long periods of time for their prearranged passengers due to "airline changes or missed flights," or other "flight problems at O'Hare," (Complaint ¶ 11) and then the police find that the drivers are parked on a public way "for a time longer than is reasonably necessary to accept passengers in answer to a call for service," then we are not so sure that plaintiffs have stated a claim under the commerce clause.

**19.** We would just like to point out to the plaintiffs that just because there are a lot of plaintiffs, this does not make them a class for purposes of a class action. Please refer to Fed.R. Civ.P. 23 for information on the nature of class actions.

fense of statute of limitations is more properly considered on a motion for summary judgment. (4) All individual defendants are dismissed in their individual capacity because plaintiffs have failed to allege that the individual defendants are personally responsible for plaintiffs' injuries. (5) The motion to dismiss the City of Chicago is denied because plaintiffs have sufficiently alleged that the actions taken were done so pursuant to a city ordinance and city policy. (6) The motion to dismiss the equal protection challenge to the Midway and O'Hare arrest and detention policy is denied because we have no evidence of the City's rational basis for the policy. (7) The motion to dismiss the equal protection challenge to the City's exclusive arrangement with Continental and Airways Rental is denied because we lack evidence of the agreement and its rational purpose. (8) We grant the motion to dismiss plaintiffs' reverse discrimination claim as to the issuance of public passenger vehicle licenses because plaintiffs lack standing to challenge the issuances. (9) We grant the motion to dismiss as it relates to plaintiffs' claim of a procedural due process violation by the very terms of the ordinances. (10) We deny the motion to dismiss so far as it relates to plaintiffs' procedural due process claim that they are being prohibited from picking up prearranged passengers at the airport. (11) We grant the motion to dismiss as to plaintiffs' substantive due process claim that their arrest was improper under the ordinances and thus violated due process. (12) We find that plaintiffs' void-for-vagueness challenge is more properly considered on a motion for summary judgment than a motion to dismiss. (13) The motion to dismiss plaintiffs' Fourth Amendment excessive post-arrest detention claim is denied. (14) We grant the motion to dismiss plaintiffs' overbreadth challenge to the ordinances because the taxicab business is not protected by the First Amendment. (15) We grant the motion to dismiss the plaintiffs' commercial speech infringement claim because plaintiffs have failed to allege they have been injured. (16) We

grant the motion to dismiss plaintiffs' antitrust claims because there is no restraint or monopolization of interstate commerce. (17) We grant the motion to dismiss plaintiffs' contract clause claim because the contract clause does not apply to conduct by a person under the color of state law. (18) We deny the motion to dismiss plaintiffs' commerce clause claim so far as it relates to interference with prearranged fares, we grant it so far as it relates to nonprearranged fares as such fares are not a part of interstate commerce. (19) We grant the motion to dismiss the punitive damage claim against the City of Chicago. (20) We deny the motion for a more definite statement finding that plaintiffs have complied with Fed.R.Civ.P. 8(a).[20] As to those claims which now remain in this case, discovery should be expeditiously concluded, and, where possible, as to each claim the parties should file an agreed statement of facts and cross-motions for summary judgment under Fed.R.Civ.P. 56 and Local Rule 12(e) and 12(f). It is so ordered.

---

20. We deny defendants' motion for improper joinder; we do not think the interest of justice will be served by forcing each of these plaintiffs to sue separately.